UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


INNOVENTION TOYS, LLC                    CIVIL ACTION

v.                                       NO. 07-6510

MGA ENTERTAINMENT, INC.,                 SECTION "F"
WAL-MART STORES, INC. and
TOYS "R" US, INC.


ORDER AND REASONS

    Before the Court are cross-motions for summary judgment.
For the reasons that follow, the motions are DENIED without
prejudice.

Background

    This suit arises out of alleged infringement of United
States Patent No. 7,264,242 (the "'*242 Patent*") for a "Light-
Reflecting Board Game."  Plaintiff contends that the defendant,
MGA Enterntainment, Inc. ("MGA"), took notice of the plaintiff's
game at a toy fair in 2005 and subsequently copied it.  Plaintiff
alleges that the game Laser Battle, manufactured and sold by MGA,
is nothing more than a copied version of plaintiff's invention,
and that Laser Battle infringes the '*242 Patent*. Defendants Wal-
Mart Stores, Inc. ("Wal-Mart") and Toys "R" Us, Inc. are retailer
distributors of MGA's Laser Battle game.

A Tulane engineering professor and two of his students invented the game taught by the '*242 Patent* sometime prior to 2005. In February 2005, they presented their game, which they called "Deflexion"[1], at the International Toy Fair trade show in New York City, which was attended by MGA employee and designer of the Laser Battle Game, Ami Shapiro. Plaintiffs have also submitted a receipt that indicates that, prior to the show, in January 2005, Mr. Shapiro purchased a Deflexion game from the plaintiff and had it delivered to MGA's headquarters in California.

The inventors of the '*242 Patent* filed provisional patent applications for their game concept on February 14, 2005 and on May 11, 2005. They filed the non-provisional application on Feb 13, 2006 and the '*242 Patent* issued on September 4, 2007.

In the board game taught by the '*242 Patent*, each player is assigned a laser which can be activated by a control button. Players are also assigned a key piece and several game pieces which are mirrored on one or both sides. The game board consists of a series of rows and columns of recessed squares. The game is played by each player taking turns either moving a game piece to an adjacent square or rotating a mirrored piece to change its angle of reflection. After a player has moved or rotated a game piece, he presses the control button to activate the laser. Any

---

[1]The inventors currently market the game under the name "Khet."

game piece which is illuminated by the resultant beam on a non-mirrored surface is removed from the board. A player wins the game by causing the laser beam to illuminate his opponent's key piece.

In 2006, the plaintiff became aware of MGA's Laser Battle game. Plaintiff sued the defendants for infringement on October 9, 2007. Plaintiff now moves for summary judgment on the issues of validity and infringement.

Defendants, in turn, seek summary judgment on the ground that the '242 Patent is invalid for lack of novelty and obviousness. Defendants rely on two prior art references that were considered by PTO Examiner during the prosecution of the '242 Patent and two that were not. All claims of the '242 Patent were initially rejected as either being anticipated by the Swift patent (U.S. Patent 5,145,182)[2] or rendered obvious in light of the Swift Patent and the Triplette patent application publication (U.S. Patent Application publication 2004/0080107 A1).[3] The inventors overcame this rejection by distinguishing their claimed invention from Swift on the basis that Swift did not disclose a number of claimed elements of the '242 Patent. Two of these

---

[2] Swift discloses a board game where players move pieces to "selectively divert" the path of laser beams towards an opponent's scoring module.

[3] Triplette describes an apparatus for projecting a laser beam onto a game board.

elements include (1) a laser that is selectively activated by the players[4] and (2) non-mirrored pieces that are moveable.[5]

While the defendants agree that Swift and Triplette represent relevant prior art with respect to the '242 *Patent*, they contend that the Examiner failed to consider two key prior art references. Defendants cite two publications describing computer games known as Laser Chess and Advanced Laser Chess. Both Laser Chess and Advanced Laser Chess are virtual representations of a laser-deflecting game designed to be played on a personal computer.

## I. <u>Standard for Summary Judgment</u>

Because summary judgment represents procedural law rather than substantive patent law, the Court applies the standard set forth by the Fifth Circuit. <u>In re Cygnus Telecomms. Tech., LLC, Patent Litig.</u>, 536 F.3d 1343, 1352 (Fed. Cir. 2008). Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact

---

[4] The plaintiff's response to the Examiner stated that "in operation of the [Swift] game board, laser pulsing is done automatically in response to the detection of a laser beam by the detection scoring module."

[5] In other words, the inventors successfully argued to the Examiner that these features represented a significant advancement over the prior art, making their invention both novel and nonobvious.

to find for the non-moving party.  See Matsushita Elec. Indus.
Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  A genuine issue
of fact exists only "if the evidence is such that a reasonable
jury could return a verdict for the non-moving party." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a
factual dispute does not defeat an otherwise properly supported
motion.   See id.   Therefore, "[i]f the evidence is merely
colorable, or is not significantly probative," summary judgment
is appropriate.   Id. at 249-50 (citations omitted).   Summary
judgment is also proper if the party opposing the motion fails to
establish an essential element of his case.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).   In this regard, the non-
moving party must do more than simply deny the allegations raised
by  the  moving  party.    See  Donaghey  v.  Ocean  Drilling  &
Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).   Rather, he
must come forward with competent evidence, such as affidavits or
depositions, to buttress his claims.   Id.  Hearsay evidence and
unsworn documents do not qualify as competent opposing evidence.
Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549
(5th Cir. 1987).   Finally, in evaluating the summary judgment
motion, the Court must read the facts in the light most favorable
to the non-moving party. Anderson, 477 U.S. at 255.

## II. <u>Infringement</u>

### A. <u>Legal Standard</u>

In determining whether a patent has been infringed, the Court must conduct a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." <u>Cybor Corp. v. Fas Techs.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (citations omitted). The claim construction analysis must be the first step in an infringement or validity analysis because "[o]nly when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention." <u>Amazon.com, Inc. v. Barnesandnoble.com, Inc.</u>, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

### 1. *Claim Construction*

Under 35 U.S.C. § 112, a patent applicant must point out and distinctively claim the subject matter the applicant regards as the invention. Like the deed to real property, "[i]t is the claim[s] that set[] the metes and bounds of the invention entitled to the protection of the patent system." <u>Zenith Lab. v. Bristol-Myers Squibb Co.</u>, 19 F.3d 1418, 1424 (Fed. Cir. 1994). "[T]he construction of a patent, including terms of art within its claim," is a matter of law and therefore "exclusively within

the province of the court." <u>Markman v. Westview Instruments</u>, 517 U.S. 370, 372 (1996). In construing or interpreting claim language, the Court must first look to intrinsic evidence, which includes the patent claims, specification, and prosecution history. See <u>Vitrionics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Court construes the claims objectively, without reference to the accused product, and only terms that are in dispute are construed. <u>Vivid Techs., Inc. v. American Science & Eng'g, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999). In addition, because the claims of a patent measure the invention at issue, the claims must be given the same meaning with respect to both infringement and validity analysis. <u>Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.</u>, 859 F.2d 878, 882 (Fed. Cir. 1988). "A patent may not, like a 'nose of wax, be twisted one way to avoid anticipation and another to find infringement." <u>Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.</u>, 431 F.2d 539, 544 (5th Cir. 1970) (citing <u>White v. Dunbar</u>, 119 U.S. 47, 51 (1886)).

District courts have broad discretion in deciding when to conduct claim construction. <u>Sofamor Danek Group v. Depuy-Motech</u>, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art."). While the Court may find it useful to conduct a hearing

and issue an order comprehensively construing the disputed claims, such a procedure is not required.[6]  See Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.").

2.  *Comparison Of The Accused Device With The Asserted Claims*

In the second step of the infringement analysis, the Court compares the claims to the accused device.  Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998).  To prove literal infringement, the patentee must prove that the accused device contains each and every limitation of the asserted claim.  Id.  Conversely, there is no infringement if the accused device or process is missing one of the elements in the asserted claim.  See Johnston v. IVAC Corp., 885 F.2d 1574, 1577-78 (Fed. Cir. 1989) (citations omitted).  This is known as the All Elements Rule.  See id.  "Thus, infringement [analysis] involves construction and interpretation of the language of the claim and determination whether the claim so construed 'reads on' [or

---

[6] Such a procedure is generally referred to as a Markman hearing. "The purpose of a Markman hearing is for the court and the parties to settle conclusively on the interpretation of disputed claims."  Novartis Corp. v. Teva Pharms. USA, Inc., 565 F. Supp. 2d 595, 603 (D.N.J. 2008).  Early resolution of the meanings of the claims allows the Court to "narrow the issues presented, thereby saving time and money."  Intervet, Inc. v. Merial Ltd., 252 F.R.D. 47, 50 (D.D.C. 2008).

literally encompasses] the accused product or process." 5A Chisum on Patents § 18.01 (2004).

Even where an accused device is not literally encompassed by the asserted claim, it may, nevertheless, infringe under the doctrine of equivalents.  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 35 (1997).  "[C]ourts have . . . recognized that to permit imitation of patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607 (1950).  Thus, "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described."  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 732 (2002).  As the Supreme Court has explained, a finding of equivalency is a determination of fact:

> What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect.  In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other

ingredients, and the function which it is
intended to perform. An important factor is
whether persons reasonably skilled in the art
would have known of the interchangeability of
an ingredient not contained in the patent
with one that was.

Graver Tank, 339 U.S. at 609.

### B. Procedural Bar to Claim Construction

The plaintiff argues that because defendants advanced no
claim construction in response to its contention interrogatory,
"there can be no dispute regarding the scope of the asserted
claims." Plaintiff further asserts that defendants' failure to
provide claim constructions obviates the need for claim
construction in this case. The Court disagrees.

Initially, the Court notes that the plaintiff, like the
defendants, has not advanced any claim constructions during
discovery. Instead, plaintiff's interrogatory referenced twenty-
five claims of the '242 Patent and requested that defendants
identify any claim limitation that defendant contended was not
met by the accused Laser Battle game. The defendants were also
asked to state their interpretation of any claim limitation
identified.[7] Prior to the interrogatory request, however,

---

[7] Interrogatory No. 7 reads:

For each Laser Board Game identified in the answer to
Interrogatory 2, and for each asserted claim of each
patent-in-suit, identify any claim limitation that MGA
contends is not met, and for each such limitation (i)
state MGA's interpretation of the claim limitation, (ii)
explain why the limitation is not met literally, (iii)
explain why the limitation is not met by the

defendants had provided the plaintiff with a 66-page, claim-by-claim analysis of the patent-in-suit, along with supporting documents. In that claim analysis, the defendants identified numerous claim limitations of the '*242 Patent* that it asserted were not met by the Laser Battle game. Thus, the extent of claim construction advanced by both parties at this point in the litigation has been the same basic assertions that Laser Battle meets or does not meet claim limitations of the'*242 Patent*.

The Court finds that, under the circumstances, the defendants are not precluded from advancing arguments regarding claim construction. As the party asserting infringement, the plaintiff cannot fairly demand that the defendants construe the meanings of the disputed claim terms when the plaintiff itself has failed to do so. See, e.g., <u>WhitServe LLC v. Computer Patent Annuities N. Am., LLC</u>, No. 3:04-CV-01897(CFD), 2006 U.S. Dist. LEXIS 27048, at *10 (D. Conn. May 9, 2006) (Opining that, as the party asserting infringement, "basic fairness suggests that [the plaintiff] provide meaning to the words [the defendant's] product has allegedly infringed"). Moreover, even if the plaintiff could establish some element of unfair surprise that would result by

---

equivalents, and (iv) identify any and all facts, evidence, and documents in support of MGA's contention.

For the purpose of responding to this interrogatory, the asserted claims references above are claims 15-22, 24, 25, 26, 28, 31, 32, 33 39, 40, 41,43, 44, 48, 49, 50, 53 and 54 of U.S. Patent No. 7,264,242.

allowing the defendant to advance claim constructions,[8] the proper remedy would be to additional discovery pursuant to Fed. R. Civ. P. 56(f). See <u>Welker Bearing Co. v. PHD, Inc.</u>, 528 F. Supp. 2d 683, 694 (E.D. Mich. 2007) (denying plaintiffs request to hold defendant's interrogatory responses as a waiver of its right to advance a particular claim construction). Accordingly, the defendants will be permitted to advance any claim constructions consistent with their asserted defenses.

## C. <u>Disputed Terms</u>

In its motion for summary judgment, the plaintiff provides a claim chart in support of its assertion that the Laser Battle game infringes independent claims 15, 25, 31, 39, 40 and 41 of the '*242 Patent*. Defendants insist that several claim terms are in dispute. For example, claim 15 recites a "game board having a playing surface and one or more receptacles for holding electronic components."[9]

Defendants argue that the game board of Laser Battle does not have receptacles for holding electronic components. They point out that the electronic components for Laser Battle, namely the laser and the sensing target, are housed in game pieces and

---

[8]For example, plaintiffs may argue that the defendants failure to respond to the interrogatory caused plaintiff to forego a particular line of inquiry.

[9] A similar dispute exists with respect to independent claim 25, which includes "[a] game having a playing surface and a cavity for holding electronic components."

not in the game board. Innovention, on the other hand, argues that the spaces on the Laser Battle board are "three-dimensional cup-shaped receptacles," that receive the game pieces, including the laser and target game pieces, which constitute electrical components.

Claim 25 recites "a first beam emitting device mounted to the game board" and "a second beam emitting device mounted to the game board." Defendants contend that the beam emitting devices in Laser Battle—the lasers—are contained in playing pieces and are therefore not mounted to the game board. Plaintiff takes the position that the laser game pieces are in fact mounted to the game board prior to game play. Plaintiff cites to the directions for Laser Battle that refer to the laser pieces being "set into place."[10]

Claims 31, 39, 40 and 41 all include the element of "moveable key pieces." Defendants devote a significant amount of their argument to this claim element. Defendants point out that all claims of the '242 *Patent* were initially rejected by the Examiner as being either anticipated or rendered obvious by the disclosures in Swift and Triplette. The plaintiff overcame this rejection by narrowing its claims to distinguish its invention

---

[10]While not discussed by plaintiff, the Court also notes that in MGA's application for a patent on the Laser Battle game concept, it claims a game "wherein the laser and laser target pieces are *mountable* to the game board by insertion in the shaped holes."

from Swift, in part, by adding the element of moveable key pieces
to independent claims 31, 39, 40 and 41. Defendants argue that,
by narrowing those claims to avoid a rejection, the plaintiff has
surrendered any claim to games without moveable key pieces and
are now precluded from asserting that a game without moveable key
pieces infringes under the doctrine of equivalents. <u>Festo Corp.
v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 734
(2002). Defendants thus argue that the only applicable standard
for evaluating whether Laser Battle meets the claim limitation of
movable key pieces is literal infringement. According to the
defendants, Laser Battle does not literally infringe any of the
amended claims since its key pieces are not moveable. Defendants
rely on the instructions to Laser Battle that state that the key
pieces, referred to as the "The Towers," "should always remain in
their original position on the board." In other words, the Laser
Battle instructions indicate that the key pieces or targets
should not be moved once game play commences. The instructions
for Laser Battle do, however, make clear that different starting
configurations are possible and that laser and target pieces from
a second Laser Battle game may be used to allow four-person play
on one board. Plaintiff, therefore, argues that because the key
pieces in Laser Battle are not permanently attached to the board

and can be positioned in different spaces on the board at the beginning of game play, they are in fact moveable.[11]

Clearly the disposition of the claim construction issues, including those discussed above, requires additional briefing and possibly oral argument. Plaintiff's motion for summary judgment on the issue of infringement is therefore DENIED without prejudice as premature. To facilitate the Court's task of claim construction, the parties shall provide claim constructions within 20 days of this order. The parties shall also advise the Court of whether they believe the disputed constructions can be resolved on the pleadings or if a <u>Markman</u> hearing is required.

### III.   <u>Validity</u>

Although the Court finds that the defendants are entitled to challenge the validity of the '*242 Patent*, the Court also finds that any analysis with respect to the validity of the '*242 Patent* should be deferred until the Court has conducted claim construction.

---

[11]

 The Court notes that key pieces disclosed in the Swift reference are permanently fixed to the game board and, therefore, cannot be moved prior to or during game play. The key pieces in the '*242 Patent*, by contrast, may be positioned in different spaces at the beginning of each game and can also be moved during game play. There are thus two possible distinctions that may have been intended by the plaintiff with the addition of the term "movable" key pieces to claims 31, 39, 40 and 41. Which of those distinctions was in fact intended by the plaintiff will be a question for the Court to determine during its claim construction analysis.

A. <u>Defendants Are Entitled to Challenge the Validity of the '*242*</u>

<u>*Patent*</u>

Plaintiff urges the Court to reject defendants' invalidity arguments as improper. According to the plaintiff, defendants failure to expressly articulate grounds for challenging the validity of the '*242 Patent* during discovery should serve as a bar to the defendant's present motion for summary judgment. Case law cited by the plaintiff, however, merely stands for the proposition that a litigant in a patent case must disclose during discovery prior art it intends to rely on to support invalidity arguments. <u>See</u> <u>Primos, Inc. v. Hunter's Specialties, Inc.</u>, 451 F.3d 841, 851 (Fed. Cir. 2006); <u>Izzo Golf, Inc. v. King Par Golf Inc.</u>, 561 F. Supp. 2d 334, 345 (W.D.N.Y. 2008); <u>Contech Stormwater Solutions, Inc. v. BaySaver Techs., Inc.</u>, 534 F. Supp. 2d 616, 624-27 (D. Md. 2008); <u>Bridgestone Sports Co. Ltd. V. Acushnet Co.</u>, U.S. Dist. LEXIS 11370, at *12-14 (D. Del. Feb. 15, 2007). Plaintiff has not identified any prior art relied on by the defendants that was not either listed by the defendants in the initial disclosures or cited by the plaintiff in the prosecution of the '*242 Patent*. Accordingly, defendants are entitled to challenge the validity of the '*242 Patent*.

B. <u>Validity Analysis of the '*242 Patent*</u>

An issued patent is presumed valid. 35 U.S.C. § 282. A party attempting to challenge a patent and thus rebut the

presumption of validity "must present clear and convincing evidence establishing facts which lead to the legal conclusion that the patent is invalid." Greenwood v. Hattori Seiko Co., Ltd., 900 F.2d 238, 241 (Fed. Cir. 1990), see also WMS Gaming, Inc. V. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir. 1999). The defendants insist that the asserted claims of '242 Patent are invalid because they were either anticipated or rendered obvious by the prior art under 35 U.S.C. §§ 101-3. The issue of "anticipation," under 35 U.S.C. § 102, is a question of fact, and "obviousness," under 35 U.S.C. § 103, is a question of law premised on underlying factual determinations. See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001) ("Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact."); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398 (2007) ("Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."). Therefore, a district court may properly grant summary judgment on obviousness or anticipation only when the underlying factual inquiries present no lingering genuine issues. Beckson Marine v. Nfm, Inc., 292 F.3d 718, 723 (Fed. Cir. 2002).

Thus, the defendants must establish by clear and convincing evidence that the '*242 Patent* does not meet the elements required to be either novel or nonobvious. To prove that the '*242 Patent* was anticipated by the prior art–that the invention was "not novel"–within the meaning of *section 102*, defendants must show that "all of the elements and limitations of the claim are found within a single prior art reference." Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). Invalidity by anticipation requires that the prior art describe or contain "every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272, 1282 (Fed. Cir. 2000); In re Omeprazole Patent Litigation, 483 F.3d 1364 (Fed. Cir. 2007). A prior art reference that does not expressly disclose an element may, nevertheless, inherently disclose that element if "that missing characteristic is necessarily present, or inherent, in the single anticipating reference." Schering Corp. v. Geneva Pharmaceuticals, 339 F.3d 1373, 1377 (Fed. Cir. 2003). To reach a determination on summary judgment that a patent claim is anticipated by prior art, the Court must determine that no facts material to the question are in dispute or that even drawing all material factual inferences in favor of the non-movant, there is

no reasonable basis on which the non-movant could prevail. <u>Scripps</u>, 927 F.2d at 1576.

To prove that the '*242 Patent* was "obvious" in view of the prior art, within the meaning of *section 103*, the defendants must show that "the differences between the ['*242 Patent*] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. In <u>Graham v. John Deere Co. of Kansas City</u>, the Supreme Court set forth the steps a court should take in applying the statutory language of *section 103*.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

383 U.S. 1, 17-18 (1966). "While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls." <u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 407 (2007). The ultimate determination of obviousness is a legal determination, but proper resolution of an obviousness challenge typically turns on underlying factual

inquiries into the scope and content of the prior art and the differences between the prior art and the claimed invention. Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. (USA), Inc., 542 F.3d 1363, 1375 (Fed. Cir. 2008). Summary judgment that a patent is invalid for obviousness is thus appropriate only where there is no dispute as to the scope of the patent claim, the content of the prior art, or the level of ordinary skill in the art. KSR, 550 U.S. at 427.

The comparison with the prior art required for both anticipation and obviousness analysis, however, cannot be conducted until the scope of the claims at issue has been determined. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 997 n.7 (Fed. Cir. 1995) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement.") (Mayer, J. concurring). Thus, as noted by the Federal Circuit, just as in an infringement analysis, claim construction serves as the first step to an anticipation or obvious analysis.

> [N]ot unlike a determination of infringement, a determination of anticipation, as well as obviousness, involves two steps. First is construing the claim, a question of law for the court, followed by, in the case of anticipation or obviousness, a comparison of the construed claim to the prior art. This comparison process involves fact-finding, and is for the fact-finder in the first instance.

<u>Key Pharms. v. Hercon Labs. Corp.</u>, 161 F.3d 709, 714 (Fed. Cir. 1998). Accordingly, it is incumbent on the Court to set forth its construction of any disputed terms before making findings on validity unless the Court determines that the resolution of claim construction would not impact its ruling. <u>See</u> <u>State Contr. & Eng'g Corp. v. Condotte Am., Inc.</u>, 346 F.3d 1057, 1068 (Fed. Cir. 2003).

Because the Court has not yet conducted any claim construction and the parties have not yet formally identified which terms are in dispute, the Court will defer any ruling on the validity of the '*242 Patent* at least until the parties have provided their respective claim constructions and identified the disputed terms.[12] Accordingly, the plaintiff's motion for summary judgment that the '*242 Patent* is valid is DENIED. For the same reasons, defendants' motion for summary judgment that the '*242 Patent* is invalid is also DENIED. Both motions are denied without prejudice, and may be renewed upon resolution of all relevant claim interpretation disputes.

IT IS FURTHER ORDERED: that both parties submit, no later than 20 days from the date of this Order, proposed claim constructions and to further advise the Court as to whether a

_____

[12]

Depending on the extent and merit of the claim interpretation disputes, the Court might decide to defer any rulings on validity until all claim construction issues are resolved.

<u>Markman</u> hearing will be required to resolve any disputed claim interpretations.

Finally, IT IS FURTHER ORDERED: that, because this matter is not ready for trial, the pre-trial conference (currently scheduled for February 26, 2009) and jury trial (currently scheduled for March 16, 2009) are hereby continued, to be reset at a scheduling conference, set by the Court.

New Orleans, Louisiana, February 19, 2009.


MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE