UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

INNOVENTION TOYS, LLC                          CIVIL ACTION

v.                                             NO. 07-6510

MGA ENTERTAINMENT, INC.,                       SECTION "F"
WAL-MART STORES, INC. and
TOYS "R" US, INC.

<u>ORDER AND REASONS</u>

Before the Court are cross-motions for summary judgment on
patent infringement and validity. For the reasons that follow, the
plaintiff's motion for summary judgment on infringement is GRANTED,
the defendants' motion for summary judgment of non-infringement is
DENIED, and the plaintiff's cross-motion regarding patent validity
is GRANTED and defendants' cross-motion regarding invalidity is
DENIED.

<u>Background</u>

This lawsuit concerns infringement and validity of a patent
for a chess-like board game in which opposing players shoot a laser
beam at mirrored game pieces in order to reflect the beam in an
attempt to strike (and thus eliminate from the game) an opponent's
key playing piece.

Luke Hooper, a former Tulane University engineering professor,
and two of his former students, Del Segura and Michael Larson,
invented the light-reflecting board game, then-called Deflexion.[1]

---

[1] The game is now commercially known as Khet.

1

They introduced it at the International Toy Fair trade show in New York City in February 2005. According to the inventors (collectively, Innovention Toys LLC), an employee of MGA Entertainment, Ami Shapiro, attended the 2005 trade show,[2] and later that year, in December 2005, bought two Deflexion games.[3] Though the record fails to disclose when,[4] Shapiro contributed to designing MGA's competing Laser Battle game. In 2006, Innovention attended the Toy Fair and expected to place its game in retail stores like Toys "R" Us and Wal-Mart; representatives of those companies, however, indicated that they would not buy Innovention's game because they had each agreed to sell the laser game of a competitor. Later that year, Innovention became aware of what product the retail stores had chosen to buy -- MGA's Laser Battle game. MGA's game relates to a board game that also involves shooting a laser beam at mirrored game pieces in order to reflect the beam onto (and thus eliminate from the game) an opponent's game

---

[2]    Whether Shapiro attended the Toy Fair is disputed. The plaintiff submits Shapiro's resumé, which suggests that indeed he participated in the 2005 Toy Fair. However, Shapiro submits a declaration stating that he did not attend that particular fair.

[3] Innovention submits a receipt dated December 1, 2005, which shows the online PayPal purchase of two of the Deflexion laser games by Ami Shapiro. (The receipt shows an MGA email address ("ashapiro@mgae.com") and requests shipment to Ami Shapiro at MGA's headquarters in Van Nuys, California.)

[4]    Shapiro states in his declaration that his first contact with Innovention's game occurred "after [he] designed the Laser Battle game."

pieces.

Based on a continuation of a provisional patent filed in February 2005, on September 4, 2007 Innovention Toys obtained U.S. Patent No. 7,264,242 (the '242 Patent), directed to a light reflecting board game.[5] One month later, on October 5, 2007, Innovention Toys, LLC sued MGA Entertainment, Wal-Mart Stores, Inc., and Toys "R" Us, Inc.[6] for patent infringement (literally and by the doctrine of equivalents). The plaintiff asserts that a product manufactured and sold by defendants -- the accused Laser Battle board game -- infringes various claims of the '242 patent.[7]

_____

[5] The '242 Patent was issued on U.S. Application 11/353,863 filed February 13, 2006; this application was a continuation of U.S. Provisional Patent Application No. 60/679,821, filed May 11, 2005 and U.S. Provisional Patent Application No. 60/652,533, filed February 14, 2005. (Innovention claims priority dating back to its earlier-filed provisional '533 Application from February 14, 2005).

   A patent application directed to a light-reflecting board game assigned to Innovention, was published on October 12, 2006. On October 18, 2006, counsel for Innovention notified MGA of Innnovention's published patent application for its laser board game and warned MGA that MGA was violating Innovention's rights. Ami Shapiro filed a patent application directed to a "laser strategy game board"; the USPTO Examiner assigned to examine the Shapiro Application conducted an independent prior art search, found Innovention's patent, and rejected all of MGA's proposed patent claims, based in part on Innovention's patent. In May 2009 the Patent Office declared the Shapiro Application to be abandoned for failure of the applicant to respond to the PTO's rejection.

[6] Toys "R" Us was added as a defendant on December 4, 2007.

[7] In the board game taught by the '242 patent, each player is assigned a laser which can be activated by a control button. Players are also assigned a key piece and several game pieces, some of which are mirrored on one or both sides. The game

Innovention seeks: (a) to enjoin the defendants from continued infringement, (b) compensatory damages under 35 U.S.C. § 154(d), (c) treble damages for willful infringement, and (d) reasonable attorneys' fees under 35 U.S.C. § 285. The defendants counterclaim, seeking a declaratory judgment that the patent-in-suit is invalid, unenforceable, and not infringed by the defendants' accused product.[8]

On February 19, 2009, the Court denied without prejudice the parties' cross-motions for summary judgment on the issues of infringement and validity, and ordered submissions addressing claim construction of disputed claims. After a Markman hearing, in May 2009, the Court resolved the seven disputed claim interpretations. The parties now seek summary relief concerning whether the accused Laser Battle game infringes the '242 Patent and, if so, whether the '242 Patent is invalid as anticipated by prior art or as being

---

board consists of a series of rows and columns of recessed squares. The game is played by each player taking turns either moving a game piece to an adjacent square or rotating a mirrored piece to change the angle of mirrored reflection. After a player has moved or rotated a game piece, he presses the control button to activate the laser. Any non-mirrored game piece which is illuminated by the laser beam is removed from the board. A player wins the game by causing the laser beam to illuminate his opponent's key piece.

[8] In answering the complaint, the defendants assert that: (1) they have not infringed any claim of the patent-in-suit, (2) the patent-in-suit is invalid and unenforceable, (3) the plaintiff is estopped from asserting infringement under the doctrine of prosecution history estoppel.

obvious.[9]

## I. Standard for Summary Judgment

Because summary judgment concerns procedural law rather than substantive patent law, the Court applies the summary relief procedures set forth by the Fifth Circuit. In re Cygnus Telecomms. Tech., LLC, Patent Litig., 536 F.3d 1343, 1351-52 (Fed. Cir. 2008). Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment

_____

[9] The plaintiff originally asserted claims 15-22, 24-26, 28, 31, 32, 33, 39-41, 43, 44, 48, 49, 50, 53, and 54, but now withdraws its assertion of all other claims, and asserts only the following: claims 31-33, 39-41, 43-44, 48-50 and 53-54.

is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. Claim Construction

### A.

Under 35 U.S.C. § 112, a patent applicant must specify and distinctively claim the subject matter the applicant regards as the invention. Like the deed to real property, "[i]t is the claim[s] that set[] the metes and bounds of the invention entitled to the protection of the patent system." Zenith Lab. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1424 (Fed. Cir. 1994). "[T]he construction of a patent, including terms of art within its claim," is a matter of law and therefore "exclusively within the province of the court." Markman v. Westview Instruments, 517 U.S. 370, 372

(1996).

Claim construction is the first step in an infringement or validity analysis because "[o]nly when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention." <u>Amazon.com, Inc. v. Barnesandnoble.com, Inc.</u>, 239 F.3d 1343, 1351 (Fed. Cir. 2001).[10] Notwithstanding the Court's prior Markman proceedings, in which the Court construed seven claim terms in dispute, the parties now suggest that one more limitation, construction of "movable", is necessary. Accordingly, the Court applies the claim construction principles more fully articulated in its May 21, 2009 Order and Reasons.[11]

---

[10] The Court construes the claims objectively, without reference to the accused product, and only terms that are in dispute are construed. <u>Vivid Techs., Inc. v. American Science & Eng'g, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999). In addition, because the claims of a patent measure the invention at issue, the claims must be given the same meaning with respect to both infringement and validity analysis. <u>Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.</u>, 859 F.2d 878, 882 (Fed. Cir. 1988). "A patent may not, like a 'nose of wax, be twisted one way to avoid anticipation and another to find infringement." <u>Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.</u>, 431 F.2d 539, 544 (5th Cir. 1970) (citing <u>White v. Dunbar</u>, 119 U.S. 47, 51 (1886)).

[11] "It is a 'bedrock principle' of patent law", the Federal Circuit, oracle of patent law, has written, "that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed.Cir. 2005)(en banc)(citation omitted). The goal of claim construction, then, is to give proper meaning and scope to claim language by giving claim terms their ordinary and customary meanings (a daunting responsibility in the arcane world of patent-

B.

The Meaning of "Movable"

Phillips teaches that words should generally be given their ordinary and customary meaning, particularly from the vantage point of a person of ordinary skill in the art. 415 F.3d at 1313. (This provides the objective baseline from which claim construction should begin. Id.) The parties predictably offer competing versions of the meaning of "movable."

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| able to be moved, or possible to move | movable from space to space or by rotation within a single space according to the rules of the game during game play |

(1) Innovention's Proposed Construction

Innovention first insists that "movable" must be given its

---

speak), according to the customary understanding of an artisan of ordinary skill at the time of the invention. See id. at 1312-13.

There is "no magic formula or catechism for conducting claim construction." Id. at 1324. However, the Federal Circuit Court of Appeals has developed some general principles:

> When construing claims, the claims and the rest of the patent, along with the patent's prosecution history (together, the intrinsic evidence of the meaning of the claims) are the primary resources; while helpful, extrinsic sources like dictionaries and expert testimony cannot overcome more persuasive intrinsic evidence.

Finisar Corp. v. The DIRECTV Group, Inc., 523 F.3d 1323, 1328 (Fed.Cir. 2008) (citation omitted).

plain meaning; and adds that the defendants did not seek construction of "movable" despite having had an opportunity to do so during the Court's Markman proceeding.[12]  Unsurprisingly, Innovention equates plain meaning with a generous construction of "movable"; that "movable" be defined as it is in the dictionary: "able to be moved" (The Oxford American Dictionary (1980)) or "possible to move" (The American Heritage Dictionary of the English Language, 4th ed. (2006)).  Innovention submits that the defendants fail to overcome the presumption that a claim term carries its ordinary and customary meaning, and therefore fail to demonstrate a reason to narrow the scope of the claim term from that meaning. Moreover, Innovention insists, the defendants' proposed construction (which begins with repeating the term it seeks to construe, then adding 21 additional words to modify "movable" rather than define the term) is contrary to its plain meaning.[13]

---

[12] The plaintiff relies on <u>Eli Lilly and Co. v. Aradigm Corp.</u>, 376 F.3d 1352, 1360 (Fed. Cir. 2004), in which the court determined that the defendant had waived its right to request construction of relevant claim, and had "thereby implicitly conceded that the meanings of the terms in [the relevant claim] are clear and not in need of construction." (The defendant had never requested the district court construe the relevant term, and never offered a construction of the claim until all of the evidence was presented to the jury.  <u>Id.</u>)

[13] Innovention points out that it used additional wording beyond "move" when it intended to mean movement within the rules of the game; for example, each of claims 39 and 40 recite "each turn comprising moving, either a translational or a rotation, a piece" and go on to add "wherein moving a piece consists of a movement one space in a horizontal, vertical, or diagonal direction to an unoccupied adjacent space." Finally, Innovention seeks to overcome

(2) Defendants' Proposed Construction

The defendants seek a contrary construction of "movable." They insist that the patentee intended to mean something more than "not cemented to the Earth"; defendants further suggest that the claims of the '242 Patent use the word "movable" to mean more than something that can be removed from the game board when the game is being disassembled. What Innovention is referring to, say defendants, is "moves that players make according to the rules of the game."[14] Accordingly, defendants submit that "movable" must be construed as: "movable from space to space or by rotation within a single space according to the rules of the game during game play."

_____

the defendants' argument that it is estopped from asserting a broad construction of "movable" by asserting that it did not contrast the stationary deflecting pieces with movable key game pieces; rather, Innovention states that it distinguished the key pieces of its claims from the deflecting pieces of the prior art by pointing out that the deflecting pieces "are two-sided mirrors", and as a result did not meet the "non-mirrored" requirement of the key pieces. In distinguishing Swift, Innovention stated:

> [the Swift patent] fails to disclose that some of the game pieces have no mirrored surfaces (non-mirrored), as recited, for example, in independent claims 15, 25, 31, 40 and 41. Accordingly, Swift also fails to disclose non-mirrored game pieces that are movable, as recited in independent claims 31 and 41.

[14] Indeed, during oral argument, counsel for defendants emphasized that, in the board game playing context, the concept of the root "move" is a term of art: telling your opponent "your move!" means none other than suggesting that it is your opponent's turn to move one of the game pieces on the board.

Because the claims of the '242 Patent themselves define "moving" as either "translational or rotation" of a game piece, and also specify that moving a piece "consists of movement one space in a horizontal, vertical, or diagonal direction to an unoccupied adjacent space" or that it consists of "remaining in the same space and rotating the piece", something limiting the plaintiff's advocated construction of the term is explicit in the claim terms. The written description of the '242 Patent confirms that there are two kinds of movement relevant to game pieces, say defendants: (1) translational movement from space to space or (2) rotational movement within a space.

(3)  The Court's Construction

As this Court previously noted in its February 19, 2009 Order and Reasons:

> [The] key pieces disclosed in the Swift reference are permanently fixed to the game board and, therefore, cannot be moved prior to or during game play. The key pieces of the '242 Patent, by contrast, may be positioned in different spaces at the beginning of each game and can also be moved during game play. There are thus two possible distinctions that may have been intended by the plaintiff with the addition of the term "movable" key pieces to claims 31, 39, 40 and 41. Which of those distinctions was in fact intended by the plaintiff will be a question for the Court to determine during its claim construction analysis.

Now faced with this task, though belatedly so, the Court begins with the words of the claims themselves. Claims 31, 39, 40, and 41 invoke the concept of "movable."

Claim 31, for example, discloses:

A board game for two opposing players or teams of players comprising:
a game board, movable playing pieces having at least one mirrored surface, movable key playing pieces having no mirrored surfaces, and a laser source,
wherein alternate turns are taken to move playing pieces for the purpose of deflecting laser beams, so as to illuminate the key playing piece of the opponent.

Claim 39 discloses:

A method of playing a game by opposed players; said game comprising two sets of distinguishable playing pieces, each set having movable pieces with no mirrored surfaces, of which one is a key piece, and pieces with at least one mirrored surface, a game board consisting of a first end, a second end, and a plurality of rows and columns, intersecting to form a plurality of spaces, the method comprising the steps of: placing each player's set of playing pieces on the game in a pre-determined starting configuration; and alternating turns, each turn comprising moving, either a translation or a rotation, a piece followed by activation of a laser, said alternating moves continuing until one player illuminates the opposing player's key piece; wherein moving a piece consists of a movement one space in a horizontal, vertical, or diagonal direction to an unoccupied adjacent space.

The Court adopts a slightly modified construction of "movable."[15] The Court finds that, based on the claim language and the plain meaning of the term, "movable" means "capable of movement

---

[15] The defendants' posited definition contains limitations not inherent in the ordinary meaning of "movable" and would render redundant other claim language, while the plaintiffs' posited construction is too far removed from the claim language and its contextual written description. The Court also notes that prosecution history appears to favor a less cramped construction of "movable", contrary to the defendants' suggestion, as noted by the Court in its February 19, 2009 Order & Reasons, given that the pieces in Swift were permanently fixed to the game board.

as called for by the rules of the game or game strategy."

### III. Infringement

In determining whether a patent has been infringed, the Court must conduct a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. Fas Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998)(citations omitted). The claim construction analysis must be the first step in an infringement or validity analysis because "[o]nly when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001).

A.  *The Scope and Meaning of the Asserted Claims*

The Court has construed "movable" to mean "capable of movement as called for by the rules of the game or game strategy."  Other claim constructions are set forth in the Court's May 21 Order & Reasons, in which the Court ruled on disputed claim constructions following a Markman hearing.  Accordingly, the scope and meaning of the asserted claims -- independent claims 31, 39, 40, 41 and dependent claims 32, 33, 43, 44, 48, 49, 50, 53, 54 are now settled, and the Court now looks to the accused device.

B. *Comparison Of The Accused Device With The Asserted Claims*

In the second step of the infringement analysis, the Court compares the asserted claims to the accused device. <u>Mas-Hamilton Group v. LaGard, Inc.</u>, 156 F.3d 1206, 1211 (Fed. Cir. 1998). To prove literal infringement, the patentee must prove that the accused device contains each and every limitation of the asserted claim. <u>Id.</u> Conversely, there is no infringement if the accused device or process is missing one of the elements in the asserted claim. <u>See</u> <u>Johnston v. IVAC Corp.</u>, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989) (citations omitted). This is known as the All Elements Rule. <u>See</u> <u>id.</u> "Thus, infringement [analysis] involves construction and interpretation of the language of the claim and determination whether the claim so construed 'reads on' [or literally encompasses] the accused product or process." 5A Chisum on Patents § 18.01 (2004).

But even if an accused device is not literally encompassed by the asserted claim, it may, nevertheless, infringe under the doctrine of equivalents. <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 35 (1997). "[C]ourts have . . . recognized that to permit imitation of patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." <u>Graver Tank & Mfg. Co. v. Linde Air Products Co.</u>, 339 U.S. 605, 607 (1950). Thus, "[t]he scope of a patent is not limited to its literal terms but

instead embraces all equivalents to the claims described." <u>Festo</u>

<u>Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 732

(2002).   As the Supreme Court has explained, a finding of

equivalency is a determination of fact:

> What constitutes equivalency must be
> determined against the context of the patent,
> the prior art, and the particular
> circumstances of the case. Equivalence, in the
> patent law, is not the prisoner of a formula
> and is not an absolute to be considered in a
> vacuum. It does not require complete identity
> for every purpose and in every respect.   In
> determining equivalents, things equal to the
> same thing may not be equal to each other and,
> by the same token, things for most purposes
> different may sometimes be equivalents.
> Consideration must be given to the purpose for
> which an ingredient is used in a patent, the
> qualities it has when combined with the other
> ingredients, and the function which it is
> intended to perform. An important factor is
> whether persons reasonably skilled in the art
> would have known of the interchangeability of
> an ingredient not contained in the patent with
> one that was.

<u>Graver Tank</u>, 339 U.S. at  609.

The defendants assert that they are entitled to summary

judgment of non-infringement because the Laser Battle game is

missing one of the elements in the asserted claim: that not all its

pieces are "movable."   The Tower pieces are intended to remain in

one space during game play, say defendants, and thus are not

"movable", as required in independent claims 31 and 39-41 (and

dependent claims).   Accordingly, the defendants say that Laser

Battle does not literally infringe the asserted claims of the '242

Patent.[16]  The Court disagrees.

The light reflecting board game disclosed by the asserted claims of the '242 Patent and the accused Laser Battle board game are virtually identical.  In the board game taught by the '242 Patent, each player is assigned a laser which can be activated by a control button.  Players are also assigned a key piece and several game pieces, some of which are mirrored on one or both sides.  The game board consists of a series of rows and columns of recessed squares.  The game is played by each player taking turns either moving a game piece to an adjacent square or rotating a mirrored piece to change the angle of mirrored reflection.  After a player has moved or rotated a game piece, he presses the control button to activate the laser.  Any non-mirrored game piece which is illuminated by the laser beam is removed from the board.  A player wins the game by causing the laser beam to illuminate his opponent's key piece.

Comparing the asserted claims to the accused device, Innovention has shown that Laser Battle contains each and every limitation of the asserted claim.  Indeed, the Court has rejected

---

[16] Likewise, the defendants urge that Laser Battle does not infringe under the doctrine of equivalents because the difference between the movable key game piece required by the '242 Patent and the stationary Laser Battle Tower piece is not insubstantial: the difference, defendants argue, is not between modes of movement or degrees of movement, but between movement and the absence of movement.

the defendants' confined proposed construction of "movable."[17]
According to the patent claims as construed by the Court, by its
literal terms, the claims reciting "movable" game pieces require
that game pieces have the capability/means to move such that
players may move them according to the rules of the game or during
set up according to game strategy. The Court finds that the Laser
Battle's Tower pieces meet this claim limitation: they are capable
of the function of movement as called for by the rules of the game
or game strategy.

It is undisputed that the only asserted difference between the
two games is that the instructions to Laser Battle suggest that its
key pieces, the Towers, are not *supposed to be* moved during game
play. The Court observes, however, that the Towers are capable of
movement, if called for by the rules of the game, in that they fit
into the recessed spaces on the board like the other pieces, and
are capable of rotation within whatever recessed space a player may
choose to place the Tower in for the start of game play; even if
the instructions suggest the pieces "should" not so be moved, that
capability is nevertheless present.[18] This capability is

---

[17] This Court has defined "movable" as "capable of
movement as called for by the rules of the game or game strategy."

[18] The defendants seem to concede that the Tower pieces
in Laser Battle are capable of fitting into the various recessed
spaces on the board and of rotation within a space (and the
photographs in the summary judgment record confirm this, as did the
presentation of the accused device during the hearing). They
continue to rely on the instructions to the game, which suggest

dispositive of the infringement issue: because the language of the asserted claims refers to pieces that are "movable", to be infringing, the accused device need only be capable of movement as called for by the rules of the game or game strategy.[19] The relevant claims here simply require a capacity to perform a function, to be capable of movement in such a way called for by the rules of the game or game strategy; the Towers are capable of such movability.[20]

---

"the Towers should always remain in their original positions on the board." Elsewhere in the instructions, it must be noted, players are urged to set up the game pieces in various start formations and layouts.

[19] In addition to the Towers' capabilities of the movement called for by the rules of the game, other factors favor a finding of infringement: the Laser Battle instructions apparently contemplate that consumers would modify the accused device to operate in an infringing manner and Laser Battle was designed to be altered or assembled before use by the consumer.

[20] See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1370 (Fed. Cir. 2009)(in infringement action regarding patent disclosing spectacle frame that supports an auxiliary frame that enables the user to securely fasten a second set of lenses on the primary frame, alleged infringer's primary eyeglass frames, "although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way" and do not need to be altered to be capable of engaging magnetic members from the top); cf. Fantasy Sports Properties, Inc. v. Sportsline.Com, Inc., 287 F.3d 1108, (Fed. Cir. 2002)(in infringement action regarding patent disclosing computer fantasy football game that contained a "bonus points" limitation, the district court erred in granting summary judgment of noninfringement because an issue of material fact remained as to whether the accused modifiable software tool that enabled subscribers to operate their own fantasy football leagues on customized internet pages supported awarding of "bonus points" when kickers scored touchdowns; "[i]n order to infringe the...patent,...an infringing software must include the 'means for

The defendants have focused their noninfringment arguments solely on whether the Laser Battle Towers were "movable"; thus, it is undisputed that all other asserted claim limitations are met. Accordingly, because the accused Laser Battle game includes each and every limitation called for by the asserted claims of the '242 Patent, the Court finds that the defendants have infringed those asserted claims (independent claims 31, 39, 40, 41 and dependent claims 32, 33, 43, 44, 48, 49, 50, 53, and 54).

### III. Validity

Patent invalidity is a defense to infringement.

An issued patent is presumed valid. 35 U.S.C. § 282. An accused infringer who defends on the ground of patent invalidity "must present clear and convincing evidence establishing facts which lead to the legal conclusion that the patent is invalid." See Greenwood v. Hattori Seiko Co., Ltd., 900 F.2d 238, 241 (Fed. Cir. 1990); see also WMS Gaming, Inc. V. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir. 1999). The defendants submit that the asserted claims of '242 Patent are invalid because they were either anticipated or rendered obvious by the prior art under 35 U.S.C. §§ 102-3. The issue of "anticipation," under 35 U.S.C. § 102, is a question of fact, and "obviousness," under 35 U.S.C. § 103, is a question of law premised on underlying factual

scoring ... bonus points' regardless whether that means is activated or utilized in any way.").

determinations.  <u>See</u> <u>Telemac Cellular Corp. v. Topp Telecom, Inc.</u>,
247 F.3d 1316, 1327 (Fed. Cir. 2001) ("Although anticipation is a
question of fact, it still may be decided on summary judgment if
the record reveals no genuine dispute of material fact."); <u>KSR</u>
<u>Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398 (2007) ("Where . . . the
content of the prior art, the scope of the patent claim, and the
level of ordinary skill in the art are not in material dispute, and
the obviousness of the claim is apparent in light of these factors,
summary judgment is appropriate."). Therefore, the Court may
properly grant summary judgment on obviousness or anticipation only
when the underlying factual inquiries present no lingering genuine
factual issues.  <u>Beckson Marine v. Nfm, Inc.</u>, 292 F.3d 718, 723
(Fed. Cir. 2002).  The defendants must establish by clear and
convincing evidence that the claims of the '242 Patent do not meet
the elements required to be either novel or nonobvious.[21]

_____

[21] The comparison with the prior art required for both
anticipation and obviousness analysis, however, cannot be conducted
until the scope of the claims at issue has been determined as has
been done by this Court.  <u>See</u> <u>Markman v. Westview Instruments,</u>
<u>Inc.</u>, 52 F.3d 967, 997 n.7 (Fed. Cir. 1995) ("A claim must be
construed before determining its validity just as it is first
construed before deciding infringement.") (Mayer, J. concurring).
Thus, as noted by the Federal Circuit, just as in an infringement
analysis, claim construction serves as the first step to an
anticipation or obvious analysis.

> [N]ot unlike a determination of infringement,
> a determination of anticipation, as well as
> obviousness, involves two steps. First is
> construing the claim, a question of law for
> the court, followed by, in the case of
> anticipation or obviousness, a comparison of

A.  Anticipation

An invention is not patentable if it is not novel.  35 U.S.C.
§ 102.  "That which would literally infringe if later in time
anticipates if earlier."  Bristol-Myers Squibb Co. v. Ben Venue
Labs., Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001)(citation
omitted).  Being described in a printed publication before the date
of the invention renders an invention unpatentable, as provided by
Section 102(a):

> A person shall be entitled to a patent unless
> (a) the invention was known or used by others
> in this country, or patented or described in a
> printed publication in this or a foreign
> country, before the invention thereof by the
> applicant for patent....

35 U.S.C. § 102(a).  The question of anticipation by a printed
publication is whether the claims encompass and would enable the
patentee to exclude others from making, using, or selling a product
described in the publication.  Titanium Metals Corp. v. Banner, 778
F.2d 775, 781 (Fed. Cir. 1985)(in determining patentability, courts
must confront the "real issues": "(1) what do the claims cover and

---

> the construed claim to the prior art.  This
> comparison process involves fact-finding, and
> is for the fact-finder in the first instance.

Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 714 (Fed. Cir.
1998).  Accordingly, it has been incumbent on the Court to set
forth its construction of any disputed terms before making findings
on validity unless the Court determines that the resolution of
claim construction would not impact its ruling.  See State Contr.
& Eng'q Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1068 (Fed. Cir.
2003).

(2) is what they cover new?").

"'Anticipation' means that the claimed invention was previously known, and that all of the elements and limitations of the claim are described in a single art reference." Hakim v. Cannon Avent Group, PLC, 479 F.3d 1313, 1319 (Fed. Cir. 2007); Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1267 (Fed. Cir. 1991)("Anticipation under § 102(a) requires that the identical invention that is claimed was previously known to others and not new"). There must be no difference between the claimed invention and the prior art reference, as viewed by a person of ordinary skill in the field of the invention. See Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272, 1282 (Fed. Cir. 2000); In re Omeprazole Patent Litigation, 483 F.3d 1364 (Fed. Cir. 2007); Atlas Powder Co. v. E.I. du Pont de Nemours & Co., 750 F.2d 1569, 1574 (Fed. Cir. 1984)(Invalidity by anticipation requires that the four corners of a single prior art reference describe or contain "every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation"). When all of the elements of the product can be found in the reference, either explicitly or inherently, the product is said to be "anticipated." In re Schreiber, 128 F.3d 1473, 1477 (Fed. Cir. 1997). A prior art reference that does not expressly disclose an element may nevertheless inherently disclose that element if "that

missing characteristic is necessarily present, or inherent, in the single anticipating reference." <u>Schering Corp. v. Geneva Pharmaceuticals</u>, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Anticipation is an issue of fact, and the question whether a claim limitation is inherent in a prior art reference is a factual issue on which evidence may be introduced. <u>In re Schreiber</u>, 128 F.3d at 1477 (citations omitted). To reach a determination on summary judgment that a patent claim is anticipated by prior art, the Court must determine that no facts material to the question are in dispute or that even drawing all material factual inferences in favor of the non-movant, there is no reasonable basis on which the non-movant could prevail.

Innovention has shown, and the Court has determined, that the defendants' Laser Battle game infringes independent claims 31, 39, 40 and 41 and dependent claims 32, 33, 43, 44, 48, 49, 50, 53 and 54 of the '242 Patent. The defendants defend this claim of infringement on grounds of anticipation, arguing that Innovention's patent claims are anticipated by the Laser Chess computer game described in the April 1987 issue of Compute! Magazine, by the Advanced Laser Chess computer game described in the Summer 1989 issue of Compute!'s Amiga Resource, and by U.S. Patent No. 5,145,182 to Swift.

The parties do not dispute that the Laser Chess publications (published by laserchess.org and described in their relevant

publications) and the Swift patent are prior art references, published before the date of invention, that constitute "printed publications" under Section 102(a). See SRI Int'l Inc. v. Internet Security Systems, Inc., 511 F.3d 1186, 1194-95 (Fed. Cir. 1998)(determination of whether a "reference" is a "printed publication" involves a case-by-case inquiry into the facts and circumstances surrounding the reference's disclosure to persons of skill in the art). The defendants insist that the Laser Chess publications and the Swift patent inherently anticipate each and every claim of the '242 Patent.[22] The plaintiff counters that none of the cited references, standing alone, identically disclose each element and limitation of the asserted claims of the '242 Patent, and thus the claims of the '242 Patent are novel over each of those references.

---

[22] The defendants do not contend that any of the prior references expressly disclose each of the elements of the '242 Patent. Accordingly, the Court focuses on whether the '242 Patent was inherently anticipated by any of these prior art references. Anticipation is explicit or express if the prior art includes a reference to the particular element of the claim; anticipation is inherent if it can be inferred in the absence of such a reference in the application. See Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003)(rejecting contention that inherent anticipation requires that a person of ordinary skill in the art would have recognized the inherent disclosure, but because "inherency requires a determination of the meaning of the prior art..., court[s] may consult artisans of ordinary skill to ascertain their understanding about subject matter disclosed by the prior art, including features inherent in the prior art").

1.  The Laser Chess and Advanced Laser Chess References

The Laser Chess and Advanced Laser Chess publications describe computer games designed to be played on an Atari computer, where players control movements on screen with a mouse.  The Laser Chess and Advanced Laser Chess references are strategy games patterned after traditional chess: "The goal is to manipulate a laser-firing piece and various reflective objects to eliminate your opponent's king."  Laser Chess, for example, incorporated mirrored and non-mirrored pieces, a laser, and other "tricky" pieces such as "beam-splitters", as well as "hypercubes" that cannot harm an opposing piece directly, but can move onto another piece, causing that piece to disappear and reappear at a randomly selected empty square.  Players move or rotate a piece during their turn, which consists of two moves.

The defendants suggest that the Court should focus on the subject matter disclosed by these computer games, not whether the games were developed for a discrete platform.  They submit that the mere fact that the game board is represented or displayed in an electronic format does not preclude their use as anticipatory references.  Also, the defendants invoke prior art references (beyond the Laser Chess and Swift references) for the purpose of suggesting that persons of ordinary skill in the art would recognize that substitution of physical game pieces and board

surfaces was inherent in prior art references.[23]   The plaintiff

argues that the defendants seek to mislead the Court into

impermissibly combining various prior art references, instead of

analyzing the four corners of a single art reference to determine

whether the '242 Patent was anticipated.  On the contrary, respond

defendants, "other references are offered as evidence to prove that

the '242 patent was inherently anticipated since the substitutions

of physical game pieces and board surface in the '242 patent would

have been recognized by persons having ordinary skill in the art of

---

[23]   The defendants suggest that "Swift teaches that
'obvious modifications of the game allow for a single player
playing against a computer.'" Also, say defendants, Innovention
incorporates by reference the '268 patent (Darak patent), which
discloses that the game is "generally played on surfaces such as
boards, but is amenable to play on other surfaces such as a
computer screen."  The defendants submit other references as
evidence that they suggest shows what was generally known by a
person having ordinary skill in the art at the time of the
invention: (1) the Perez patent on a conventional board game
discloses an alternative computer embodiment and states that it is
well known in the art that games may be played on a computer in a
two-dimensional environment; (2) the Lin patent on a traditional
board game discloses that it was apparent to those skilled in the
art that a physical board game could be implemented in a video game
or computer-based format; (3) the Hutchins patent on a conventional
chess-type board game disclosing that the chess board has remained
substantially the same, even in the internet's electronic gaming
environment.  Finally, the defendants point out that the '242
Patent is the subject of a license agreement in which the licensee
is given permission to make a computer game that embodies the
featured light reflecting board game.  This shows, say defendants,
that the inventors of the '242 Patent apparently view the scope of
their claims to cover not only the physical game pieces and board
surface but also the virtual version of the game.  Innovention must
concede, insist the defendants, that any characteristics that may
expressly be lacking from Laser Chess would be inherent or
naturally result when the virtual game is transformed into a
physical game board and game pieces.

electronic board games."

Innovention urges the Court to reject what it characterizes as the defendants' attempt to import features that are wholly absent from the primary references; the defendants do not, says Innovention, permissibly seek to use extrinsic evidence to interpret the meaning of any of the three primary references. The Federal Circuit in Continental Can observed that an accused infringer may look to extrinsic evidence to demonstrate what the anticipatory reference itself actually discloses:

> To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.

Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991)(citations omitted). Unlike the expert testimony in Continental Can, which was used to interpret the Marcus reference,[24] Innovention suggests that the defendants in this case

_____

[24] The issue in Continental Can was the sufficiency of a certain prior art (Marcus) reference to anticipate patent claims directed to a container that was reinforced, on its bottom surface, by "hollow" ribs. Id. at 1268-69. Marcus did not expressly show that its ribs, formed by injection blow molding, were "hollow," as the claims required. Id. at 1268. The court held that it was permissible to use extrinsic evidence (there, expert testimony) to show whether injection blow molding necessarily resulted in the ribs being hollow – whether this feature was inherent in Marcus. Id. at 1269.

do not make any such permissible use of extrinsic information.  The plaintiff insists that none of the cited references, standing alone, identically disclose each element and limitation of the asserted claims of the '242 Patent, and thus the claims of the '242 Patent are novel over each of those references.  Because the defendants attempt to accumulate the diversity of prior art reference to establish unpatentability, the Court agrees.  See Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1267 (Fed. Cir. 1991)("When more than one reference is required to establish unpatentability of the claimed invention anticipation under § 102 can not be found, and validity is determined in terms of § 103.").

　　　2.  The Swift Reference

　　　The defendants' attempt to show unpatentability based on Swift alone likewise fails.  The defendants assert that the Patent Office should have rejected Innovention's claimed invention under Section 102(a) based on the Swift patent.  The Examiner found all of the asserted claims to be patentable over Swift.  Given the teachings of Swift, the Court finds that the defendants (in relying on the four corners of the Swift reference that was before the Examiner in their attempt to show inherent anticipation) fail to overcome "the deference that is due to a qualified government agency presumed to have properly done its job"; accordingly, the Court finds that the '242 Patent was not anticipated by Swift.  See American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir.

1984). The real battle is whether the '242 Patent was obvious in view of the prior art.

B. Obviousness

If any prior art fails to invalidate a plaintiff's patent on grounds of anticipation under Section 102, it may nevertheless constitute evidence of obviousness under Section 103, a separate and independent ground for invalidating a patent. See Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1267 (Fed. Cir. 1991)("When more than one reference is required to establish unpatentability of the claimed invention anticipation under § 102 can not be found, and validity is determined in terms of § 103.").

To be patentable, an invention must not be "obvious" to those having ordinary skill in the relevant art. 35 U.S.C. § 103. To prove that the '242 Patent was "obvious" in view of the prior art, within the meaning of Section 103, the defendants must show that "the differences between the ['242 Patent] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." See 35 U.S.C. § 103. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 416 (2007)(patent claim disclosing position-adjustable pedal assembly with electronic pedal sensor attached to support member of

pedal assembly was invalid as obvious, in view of patent for adjustable pedal with a fixed pivot, and other patent teaching a solution to wire chafing problems, namely locating the sensor on support structure; it was obvious to persons of ordinary skill in the art to combine first patent with pivot-mounted pedal position sensor).

In Graham v. John Deere Co. of Kansas City, the Supreme Court set forth the steps the Court should take in applying the statutory language of Section 103:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

383 U.S. 1, 17-18 (1966). "While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls." KSR, 550 U.S. at 407. The ultimate determination of obviousness is a legal determination, but proper resolution of an obviousness challenge typically turns on underlying factual inquiries into the scope and content of the prior art and the differences between the prior art and the claimed invention. Commonwealth Sci. & Indus. Research Organisation v.

Buffalo Tech. (USA), Inc., 542 F.3d 1363, 1375 (Fed. Cir. 2008).
Summary judgment that a patent is invalid for obviousness is thus
appropriate only where there is no dispute as to the factual
inquiries -- the Graham factors. KSR, 550 U.S. at 427.

A prima facie case of obviousness requires an identification
of prior art references that, when combined or modified, would
contain all the limitations of the claimed invention at issue. See
Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323 (Fed. Cir.
1999)(citations omitted).   Once such references have been
identified, the fact-finder must consider the Graham factors to
determine whether a prima facie case of obviousness exists: (1) the
scope and content of the prior art; (2) the differences between the
claimed invention and the prior art; (3) the level of ordinary
skill in the art; as well as (4) any objective indicia of
obviousness. See Continental Can Co. USA v. Monsanto Co., 948 F.2d
1264, 1267 (Fed. Cir. 1991).

1.  The Factual Inquiries Underlying Obviousness

(a) scope and content of the prior art

In order to determine what constitutes relevant prior art, the
Court must determine the scope of the claimed invention and the
nature of the problem the inventor sought to solve. See Graham,
383 U.S. at 34-35.  The scope of the claimed invention should be
determined by reading the claims with the "broadest reasonable
construction 'in light of the specification.'" Phillips v. AWH

31

Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005)(quotation omitted).
The claimed invention discloses a light-reflecting board game as
earlier described.  The prior art references include various games,
such as Laser Chess and Advances Laser Chess publications, which
disclose laser chess games to be played on an Atari computer, as
well as the Swift reference.  The same observed flaws regarding
anticipation apply as well to obviousness arguments.

(b)  differences between claimed invention and prior art

Whether prior art is considered analogous under Section 103 is
a question of fact.  In re Clay, 966 F.2d 656, 658-59 (Fed. Cir.
1992)(citing Panduit Corp. v. Dennison Mfg., 810 F.2d 1561, 1568
n.9 (Fed. Cir.), cert. denied, 481 U.S. 1052 (1987)).  A prior art
reference is analogous if it "is from the same field of endeavor,
regardless of the problem addressed, [or] if...not within the
inventor's field of endeavor, whether the reference still is
reasonably pertinent to the particular problem with which the
inventor is involved."  Id. at 658-59; In re Deminiski, 796 F.2d
436 (Fed. Cir. 1986).

Innovention observes that the Laser Chess publications are
non-analogous art because its inventors were concerned with making
a non-virtual, three-dimensional laser-based board game, a project
that involves aspects of mechanical engineering and optics.  Laser
Chess and Advanced Laser Chess, on the other hand, involve computer
programming and software, calling for application of computer

32

science.  The Laser Chess publications, says Innovention, teach nothing about actual lasers and targets and nothing about ensuring proper alignment of lasers, targets, and mirrors to ensure the game will properly function; the publications offer no insight into how to make a real-world version of a laser game.[25]  The defendants merely generalize that the field of endeavor of the '242 Patent is games and, because Laser Chess and Advanced Laser Chess are both games, they are clearly within the field of endeavor of the '242 Patent.  As essentially an electronic version of the '242 Patent, the defendants take the position that the Laser Chess publications and the patented claims are analogous art.  Such reasoning is unpersuasive; it is limitless.

(c) level of ordinary skill in the art

Another factor the Court must consider in determining whether the asserted claims of the '242 Patent were obvious in light of prior art references is the level of ordinary skill in the art. The defendants' position is that "[a]ny level of ordinary skill Innovention advocates will be sufficient for this Court to grant summary judgment" in defendants' favor because "[t]he claimed invention is simply a physical realization of the Laser Chess computer game described in the 1987 magazine article and provided

_____

[25] The plaintiff tellingly points out that it appears MGA did not consider the Laser Chess publications to be analogous art because, when MGA was prosecuting its own patent application for its Laser Battle board game, it did not disclose them to the Patent Office Examiner as relevant prior art.

by laserchess.org." Accordingly, urge defendants, a person having a minimum level of skill could have reproduced the claimed invention from the Laser Chess computer game simply by printing the game board surface, fixing laser pointers to the game board's surface, and fixing mirrors to generic upright game pieces. Such a position not only minimizes plaintiff's patent, it also seems a convenient disavowal of defendant's game as well.

Where a patent challenger provides no evidence to support a finding as to the level of skill in the art, its obviousness argument can be pursued only on the basis of what is obvious to a layperson. <u>Kloster Speedsteel AB v. Crucible Inc.</u>, 793 F.2d 1565, 1574 (Fed. Cir. 1986)(explaining that, where a court makes "a determination that an invention would have been obvious to one of the lowest level of skill, i.e., that of a layman," such a "particular level of skill finding d[oes] not improperly influence the ultimate conclusion of [obviousness] under § 103"), <u>overruled on other grounds by</u> <u>Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.</u>, 383 F.3d 1337 (Fed. Cir. 2004).

The plaintiff points out that the defendants have not provided any evidence that a layperson would have known of the Laser Chess references or other references cited or that a layperson would have any reason to modify the Laser Chess teachings; the defendants have thus failed to state a prima facie case of obviousness. The Court agrees. There is no record evidence suggesting what capabilities

one with the level of ordinary skill in the art would have perceived as to obviousness; it seems some knowledge of mechanical engineering or optics is required.

(d) objective considerations of obviousness

The objective indicia, or secondary considerations, of obviousness are most useful to the fact-finder when the asserted claims of the patent-in-suit are simply a variation on known themes. See Continental Can Co., 948 F.2d at 1273 ("The significance of a new structure is often better measured in the market-place than in the courtroom."). Such secondary considerations as commercial success, filling an existing need, or failure of others, may be considered to aid in the understanding of the commercial environment and state of the art at the time of the patent-in-suit. Graham, 383 U.S. at 17-18. Accordingly, evidence of how the invention was perceived for example, by competitors who copied it, by customers that bought it, or by critics that raved about it, "constitutes independent evidence of nonobviousness." See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1365 (Fed. Cir. 2008).[26]

First, Innovention submits evidence of commercial success of

---

[26] Because Innovention's Deflexion/Khet game as marketed is essentially identical to embodiments shown in the patent, the Court presumes the requisite nexus between the objective evidence of non-obviousness submitted by Innovention and the claimed features of the '242 Patent. See Tec Air, Inc. v. Denso Mfg. Mich. Inc., 192 F.3d 1353, 1361 (Fed. Cir. 1999)(citations omitted).

its Deflexion/Khet game: 140,000 games have been sold to date, notwithstanding the challenges presented to a small three-person independent company with minimal marketing capabilities. Innovention submits evidence that, in just the few years since its introduction, fans of the game have started clubs dedicated to the games, and Khet tournaments (completely independent of Innovention) take place all over the world.

Second, Innovention submits evidence that its Khet game satisfied a long-felt, but unmet need. The plaintiff suggests that its sudden success (as shown by number of games sold with little marketing efforts, as well as the unsolicited praise from the media) indicates that the Laser Chess computer game did not satisfy the need for the unique combination of features claimed in the patent-in-suit.

Third, Innovention submits evidence of industry praise and recognition: it was nominated for Outstanding Technology of the Year by the International Academy of Science; it is in an elite group of games honored by Mensa; it was one of just five finalists for the Toy Industry Association's 2007 Game of the Year award. No mere obvious technology, argues Innovention, could have earned such praise.

2.  The Legal Determination of Obviousness

"If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." <u>KSR Int'l Co. v.</u>

<u>Teleflex Inc.</u>, 550 U.S. 398, 417 (2007)("When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one"). In 2007, the Supreme Court in <u>KSR</u> rejected a rigid application of the "TSM" (teaching, suggestion, or motivation) test, which holds that obviousness can be found only if some 'teaching, suggestion or motivation' to combine the prior art references could be shown in the prior art. <u>See</u> <u>id.</u> at 415-16 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results").

But defendants have failed to establish that summary relief is appropriate in their favor on the obviousness issue. The defendants have failed to provide convincing evidence that adapting a laser chess computer game to a physical board game was a design step well within the grasp of a person of ordinary skill in the relevant art, which they suggest is a layperson. Indeed, in the face of the plaintiff's objective evidence of non-obviousness, defendants have not met their burden on this record.

Accordingly, the plaintiff's motion for summary judgment of infringement is GRANTED, the defendants' motions for summary judgment are DENIED, and the plaintiff's cross-motion for summary

judgment on patent validity is GRANTED.[27]


New Orleans, Louisiana, October 14, 2009.


_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

38