UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| INNOVENTION TOYS, LLC,<br>　　Plaintiff | CIVIL ACTION |
| VERSUS | No. 07-6510 |
| MGA ENTERTAINMENT, INC.,<br>WAL-MART STORES, INC.<br>TOYS "R" US, INC.<br>　　Defendants | SECTION "E" |

**ORDER AND REASONS**

Before the Court is Defendants' Motion *in Limine* No. 2 to Preclude Irrelevant and Prejudicial Evidence, Testimony and Argument Relating to: (1) Hurricane Katrina, (2) Khet 2.0, (3) the Vacated Permanent Injunction, and (4) the Overall Revenues, Profits, or Wealth of any of the Defendants Relative to Plaintiff.[1]  Plaintiff has filed a response to Defendants' motion.[2]

　　**I.　Hurricane Katrina**

Defendants argue that any testimony relating to Hurricane Katrina with respect to Plaintiff's business operations is irrelevant and unfairly prejudicial.  See Fed. R. Evid. 401 and 403.[3]  Defendants assert that the Court should preclude evidence, testimony

---

[1] R. Doc. 477.  Defendants in this case are MGA Entertainment, Inc. ("MGA"), Toys "R" Us, Inc. ("Toys 'R' Us") and Wal-Mart Stores, Inc. ("Wal-Mart").

[2] R. Doc. 490.

[3] Rule 401 of the Federal Rules of Evidence provides:

　　Evidence is relevant if:

　　(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

　　(b) the fact is of consequence in determining the action.

1

and argument regarding Hurricane Katrina because the purported effects, if any, that the storm had on Plaintiff's business operations is not probative of any fact relating to obviousness, willfulness or damages. Furthermore, even if the Court were to consider testimony and evidence regarding Hurricane Katrina to be relevant, Defendants contend that the relevance of such testimony and evidence is substantially outweighed by unfair prejudice. Defendants argue that if the Court permits testimony and evidence regarding Hurricane Katrina, it is highly likely that the jury will base its decision on something other than the established propositions in this case – that is, that the jury will be swayed by an alleged kinship with a small, hometown business that suffered as a result of the storm.[4]

Plaintiff responds that evidence and testimony regarding Hurricane Katrina is relevant because, first, it serves to rebut Defendants' challenge to Plaintiff's claim for lost profits. Second, Plaintiff is offering commercial success as an objective indicator of nonobviousness. Plaintiff argues that Khet's success despite the obstacles Plaintiff encountered in the wake of Hurricane Katrina is highly probative as an objective indicator of nonobviousness.[5]

The Court finds that testimony and evidence regarding Hurricane Katrina is both relevant and not unfairly prejudicial. The storm's effects are inextricably intertwined with Plaintiff's history as a company. Furthermore, such testimony and evidence is

---

Rule 403 of the Federal Rules of Evidence provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

[4] R. Doc. 447-1 at pp. 5-6.

[5] R. Doc. 490 at p. 1.

relevant to Plaintiff's damages claim and its argument that Khet's commercial success is an objective indicator of nonboviousness.  Finally, more than seven years have passed since Hurricane Katrina made landfall on August 29, 2005, thereby diminishing any risk of prejudice to Defendants from the introduction of such highly relevant and probative testimony and evidence.  As a result, the Court **DENIES** Defendants' motion to preclude evidence, testimony and argument relating to Hurricane Katrina.

## II.    Khet 2.0

Defendants argue that the Court should preclude Plaintiff from introducing any testimony, evidence or argument regarding the most recent version of Plaintiff's game, Khet 2.0, which reached the market in January 2011, because such evidence is irrelevant and unfairly prejudicial.[6]  First, Defendants assert that MGA introduced its Laser Battle game to the market in May 2006, more than four years before Plaintiff released Khet 2.0.  Consequently, Defendants contend, MGA could not have copied Khet 2.0 and the jury should not be able to consider that version of the game.  Second, Defendants argue that the parties agree that the relevant period for damages runs from October 18, 2006, through the sale of the last Laser Battle game in January 2010.  As Khet 2.0 did not reach the market until January 2011, Defendants contend that sales related to Khet 2.0 are not probative of any fact necessary for Plaintiff's damages clam.

Plaintiff responds that Khet 2.0 is relevant to the issue of commercial success as an objective indicator of nonobviousness.  Furthermore, now that MGA is no longer selling Laser Battle, Toys "R" Us sells Khet 2.0.  As such, Plaintiff asserts that Khet 2.0 is

---

[6] R. Doc. 477-1 at pp.6-8.

relevant to the issue of lost profits because, but for the manufacture and sale of MGA's Laser Battle, Plaintiff would have sold more units of Khet to retailers like Toys "R" Us.[7]

The Court finds that testimony and evidence regarding Khet 2.0 is relevant to the issue of lost profits. Plaintiff shall not be precluded from introducing such testimony and evidence to support its argument regarding lost profits. However, as Khet 2.0 was not released until well after MGA allegedly copied Plaintiff's game, MGA logically could not have copied Khet 2.0. Plaintiff may not introduce testimony and evidence or argue that Khet 2.0 shows copying. Accordingly, Defendants' motion to preclude testimony and evidence regarding Khet 2.0 is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

### III.    Vacated Permanent Injunction

On October 14, 2009, another section of this Court granted Plaintiff's cross-motion for summary judgment that the '242 patent was valid and that Defendants had infringed the '242 patent, and denied Defendants' cross-motion for summary judgment that the '242 patent was invalid and that Defendants' actions did not constitute infringement.[8] Soon thereafter, Plaintiff moved for a permanent injunction to enjoin Defendants from committing any further acts that would infringe the '242 patent.[9] Judge Martin L.C. Feldman granted Plaintiff's motion for a permanent injunction on January 13, 2010, finding that Plaintiff had suffered irreparable injuries as a result of Defendants' conduct and that Plaintiff would continue to suffer irreparable injury if such an injunction did not issue. Judge Feldman enjoined Defendants from making,

---

[7] R. Doc. 490 at pp. 3-4.

[8] R. Doc. 176.

[9] R. Doc. 179.

4

importing, selling and/or offering Laser Battle for sale, or otherwise infringing the '242 patent.[10]

Defendants appealed Judge Feldman's October 14, 2009 Order. The U.S. Court of Appeals for the Federal Circuit affirmed Judge Feldman's determination that Defendants' actions constituted infringement, but vacated and remanded his determination that the '242 patent was nonobvious.[11] Because it vacated and remanded the summary judgment decision that the '242 patent was nonobvious, the Federal Circuit also vacated the permanent injunction.[12]

Defendants argue that the vacated permanent injunction is not probative of any fact of consequence relating to obviousness, willfulness or damages. Even if the permanent injunction were relevant to a matter at issue, Defendants assert that the probative value of any such evidence, testimony or argument would be substantially outweighed by the danger of unfair prejudice to Defendants because Plaintiffs would seek to paint Defendants in a negative light.[13]

Plaintiff responds that, at the September 28, 2012 oral argument hearing on the parties' motions for summary judgment, Defendants informed the Court that MGA's decision to stop selling Laser Battle was voluntary or due to market forces.[14] Plaintiff argues that, if Defendants emphasize that the decision to stop selling Laser Battle was voluntary or due to market forces, the Court's injunction will rebut the notion that the

---

[10] R. Doc. 220.

[11] *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011).

[12] *Innovention Toys*, 637 F.3d at 1323.

[13] R. Doc. 477-1 at pp. 8-9.

[14] Judge Feldman granted Plaintiff's motion for a permanent injunction on January 13, 2010. Defendants sold the last copy of Laser Battle sometime in January 2010.

game was no longer in demand or no longer enjoyed commercial success. Furthermore, with respect to the issue of willful infringement, Plaintiff contends that MGA's continued reliance on its opinion-of-counsel non-infringement letter following the injunction demonstrates the commercial recklessness of MGA's conduct.

The Court concludes that Plaintiff should be able to refer to the permanent injunction in order to impeach any testimony or evidence MGA offers regarding why it ceased selling Laser Battle in January 2010. However, any testimony, evidence or argument utilizing the permanent injunction for purposes other than impeachment on this point is unfairly prejudicial and substantially outweighs any relevance considerations. As a result, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to preclude any testimony, evidence or argument regarding the vacated permanent injunction as set forth above.

### IV. The Parties' Financial Conditions

Finally, Defendants argue that the Court should preclude Plaintiff from offering any testimony or evidence, or referring to Defendants' overall revenues, profits, or wealth because Defendants' financial status is not relevant to the remaining issues of obviousness, willfulness or damages relating to sales of Khet. Defendants further argue that, if the Court does consider such evidence to be relevant, its probative value is substantially outweighed by the danger that the jury might award damages based on MGA's ability to pay rather than on proper evidence regarding damages.[15]

Plaintiff responds, first, that Defendants' relative wealth and size is being used against the Plaintiff's claim for lost profits. For example, Plaintiff underscores,

---

[15] R. Doc. 477-1 at pp. 9-10. MGA has agreed to indemnify Toys "R" US and Wal-Mart in the event that the jury finds the '242 patent is valid and awards damages for Defendants' infringement of the patent.

Defendants' damages expert claims that Plaintiff was too small to compete with large toy companies like MGA for shelf space at large toy retailers such as Wal-Mart and Toys "R" Us. Consequently, Plaintiff argues, Defendants have put their wealth and size at issue in this case. Second, Plaintiff contends that Defendants' wealth and size is relevant to the *Georgia-Pacific* factors that the jury will be asked to consider when determining whether Plaintiff is entitled to reasonable royalty damages.[16] The fifth *Georgia Pacific* factor – the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter – encompasses a consideration of the relative wealth and size of the parties according to Plaintiff. Finally, Plaintiff asserts that MGA's financial condition is relevant to the question of willfulness. That is, Plaintiff argues that a large company like MGA has an in-house legal department and the resources to track pending patent applications.

The Court has reviewed the caselaw the parties have submitted. To the extent that Defendants argue that any attempt by Plaintiff to use its disadvantaged status as a small company to appeal "to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiff[]," the Court agrees that this is improper. *See Adams Labs. v. Eng'g*, 761 F.2d 1218, 1226 (7th Cir. 1985). Indeed, as the Seventh Circuit has stated, such a tactic "may be cause for reversal." *Adams Labs.*, 761 F.2d at 1226. The Court will not allow Plaintiff to refer to the parties' financial condition in this manner. Nevertheless, the other cases that Defendants cite are not patent cases and the Court does not find them persuasive

---

[16] *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

authority to support the wholesale exclusion of any testimony or evidence about the Defendants' financial condition.

The caselaw that Plaintiff has supplied indicates that the jury should consider the parties' relative wealth and size in determining the reasonable royalty rate, if any, that the jury awards to Plaintiff.  *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 898 F. Supp. 1334, 1336-38 (N.D. Iowa 1995) (denying motion *in limine* seeking to exclude testimony regarding the accused infringers' financial condition).  Moreover, Defendants have put their wealth and size at issue by arguing that Plaintiff is too small to compete with toy companies like MGA who sell toys to retailers such as Wal-Mart and Toys "R" Us.  Consequently, the Court finds that such testimony is relevant and not substantially outweighed by the danger of unfairly prejudicing Defendants.  The Court **GRANTS IN PART** Defendants' motion such that Plaintiff may not appeal "to the sympathy of jurors through references to the relative wealth of the [D]efendants in contrast to the relative poverty" of the Plaintiff.  Furthermore, the Court **DENIES IN PART** Defendants' motion such that Plaintiff may present testimony, evidence and argument as is relevant for its case in chief and for rebuttal.

**IT IS SO ORDERED**.

New Orleans, Louisiana, this __1st__ day of November, 2012.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

8