UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

INNOVENTION TOYS, LLC                    CIVIL ACTION

VERSUS                                   NUMBER: 07-6510

MGA ENTERTAINMENT, INC.,                 SECTION: "E"(5)
ET AL.

## REPORT AND RECOMMENDATION

Pursuant to a referral from the presiding District Judge (rec. doc. 634, p. 62), presently before the Court is plaintiff's request for attorneys' fees and taxable and non-taxable costs, same having been fully briefed by the parties and the subject of an evidentiary hearing which occurred over the course of two days.  (Rec. docs. 602, 607, 613, 628, 646, 648-652).

The facts and lengthy procedural history leading to the matter at hand will not be recounted in full here but will be summarized only briefly.  The above-captioned matter is an action for the infringement and validity of a patent (the so-called '242 patent) involving a light-reflecting, chess-like board game.  (Rec. docs. 1, 11).  Following the filing of cross-motions for summary judgment, a similar game marketed by defendant, MGA, was found to

have infringed the '242 patent held by plaintiff.  _Innovention Toys, LLC v. MGA Entertainment, Inc._, 665 F.Supp.2d 636 (E.D. La. 2009).  On the heels of that ruling, a permanent injunction was entered in plaintiff's favor, enjoining the defendants from manufacturing and marketing their infringing product.  (Rec. doc. 220).  Those rulings were subsequently affirmed in part and vacated in part by the United States Court of Appeals for the Federal Circuit.  _Innovention Toys, LLC v. MGA Entertainment, Inc._, 637 F.3d 1314 (Fed. Cir. 2011).

Following the Federal Circuit's remand, the issues remaining in the case were tried to a jury which found, _inter alia_, that MGA's infringement of the '242 patent was willful, awarding plaintiff $167,455.00 in pre-issuance royalty damages and $1,405,708.00 in post-issuance lost profit damages.  (Rec. doc. 574-3).  In due course, MGA filed a motion in which it sought a ruling that its infringement was not willful.  (Rec. doc. 598). Plaintiff then filed a counterveiling motion requesting a finding that defendant's infringement was willful and seeking enhanced damages, attorneys' fees, costs, expert fees, and interest as well as a permanent injunction enjoining MGA from further acts of infringement.  (Rec. doc. 602).  On June 17, 2013, the District Judge denied MGA's motion and granted in part, denied in part, and deferred in part plaintiff's motion.  (Rec. doc. 634).  In doing

so, the Judge found that defendant's infringement had indeed been willful and awarded enhanced damages, trebling the amount the jury had awarded to $4,719,489.00. (Id.).[1]/  The Judge also found that the case was exceptional and justified an award of attorneys' fees and that an award of taxable and non-taxable costs, prejudgment, and post-judgment interest was appropriate but denied plaintiff's request for expert witness fees. (Id.).  It is from that decision that the issue of attorneys' fees and certain of the costs come before the Court. (Id.).

Title 35 U.S.C. §285 provides that "[t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party." Factors to be considered in determining exceptionality include litigation misconduct; vexatious, unjustified, or otherwise bad faith litigation; and, whether the infringement was willful. Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1246 (Fed. Cir. 2003).  Once a case has been determined to be exceptional, the subsequent decision to award attorneys' fees is discretionary and permits a court to weigh intangible as well as tangible factors such as the degree of culpability, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.  Superior Fireplace Co. v.

---

[1]/ On MGA's motion, that amount was subsequently corrected to $4,384,579.00.  (Rec. docs. 638, 640).

3

Majestic Prod. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001).  The purpose of §285 is to reimburse a party that is injured when forced to undergo an exceptional case and to place that party, as near as may be, in the situation it would have been had the infringement not been committed.  Mathis v. Spears, 857 F.2d 749, 753-54 (Fed. Cir. 1988)(citations and quotations omitted).

In contrast to other sources like Rule 11 which principally serve a deterrent purpose, §285 is primarily a compensatory provision.  Highmark v. Allcare Health Management Systems, Inc., 701 F.3d 1351, 1354-55 (Fed. Cir. 2012), cert. granted, ___ U.S. ___, 134 S.Ct. 48 (2013)(citing Mathis, 857 F.2d at 753).  "In determining the compensatory quantum of an award under Section 285 in such an egregious case, therefore, courts should not be, and have not been, limited to ordinary reimbursement of only those amounts paid by the injured party for purely legal services of lawyers, or precluded from ordinary reimbursement of legitimate expenses ... [a party] was unfairly forced to pay." Mathis, 857 F.2d at 754 (citing Central Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983)).  Unlike situations involving Rule 11 which often focus on discrete conduct which occurs in a snapshot in time, §285 is based on the entire case as a whole. Highmark, 701 F.3d at 1355.

Plaintiff's prevailing party status is beyond peradventure and

the District Judge has already determined that the present case is both exceptional and that an award of attorneys' fees is warranted, the two-step test counseled by the caselaw.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998)(en banc).  That determination having been made, the question becomes what fee award is reasonable in light of the circumstances of this case.  Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc., 707 F.Supp.2d 737, 757 (N.D. Ohio 2010).  The starting point in that analysis is to determine the lodestar, the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).  That amount may then be adjusted based upon the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  Hensley, 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9; Bendix Commercial Vehicle Systems, LLC v. Haldex Brake Products Corp., No. 09-CV-0176, 2011 WL 871413 at *1 (N.D. Ohio March 1, 2011).  However, "... the most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941.  "Where ... a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended in the litigation.'"  Mathis, 857 F.2d at 755 (quoting Hensley, 461 U.S. at 435, 103 S.Ct. at 1940).

In arriving at a lodestar amount, the reasonableness of the rates claimed by the prevailing party generally corresponds to the prevailing rates in the relevant community, those "'... that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" _Bendix_, 2011 WL 871413 at *1 (quoting _Geier v. Sundquist_, 372 F.3d 784, 791 (6th Cir. 2004)). Caselaw is abundant, however, which allows for the use of national or speciality rates, sometimes referred to as those of an "out-of-town specialist", in the field of patent law and other complex litigation. _Bendix_, 2011 WL 871413 at *1 (and cases cited therein); _St. Gobain_, 707 F.Supp.2d at 758-59; _iLor, LLC v. Google, Inc._, No. 07-CV-0109, 2009 WL 3367391 at *5 (E.D. Ky. Oct. 15, 2009), _rev'd on other grounds_, 631 F.3d 1372 (Fed. Cir. 2011).

As the courts have recognized, "... patent litigation is a specialized practice with a national bar." _Voda v. Cordis Corp._, No. 03-CV-1512, 2006 WL 2570614 at *5 (W.D. Okla. Sept. 5, 2006), _aff'd in part_, _rev'd in part_, _vacated in part_, 536 F.3d 1311 (Fed. Cir. 2008). It is, "... by its very nature, national and not necessarily regional in scope ..." _iLor_, 2009 WL 3367391 at *5. "Attorneys who specialize in '... _patent law_ ...' tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive." _Saint-Gobain_, 707 F.Supp.2d at 759 (quoting _Chrapliwy v. Uniroyal, Inc._, 670 F.2d

6

760, 769 (7th Cir. 1982), <u>cert</u>. <u>denied</u>, 461 U.S. 956, 103 S.Ct. 2428 (1983)(emphasis in original)).  "Patent cases present complex legal issues", <u>Highmark</u>, 701 F.3d at 1356, the litigation of which can be quite expensive.  <u>Automotive Technologies Int'l., Inc. v. Siemens VDO Automotive Corp.</u>, 744 F.Supp.2d 646, 652 (E.D. Mich. 2010). "In considering the <u>Johnson</u> factors in the context of patent litigation, the reasonable rate may be greater than in other areas of practice because of the expertise required to litigate cases, because higher fees are customary in that specialty, and because of the desirability and arguable necessity of seeking counsel outside of the immediate geographic region." <u>Id</u>. at 655.

When determining a reasonable fee to be awarded to a prevailing party, courts have found it useful to consider the time that was expended and the fees that were charged by the prevailing party's opponent.  <u>Hnot v. Willis Group Holdings, Ltd.</u>, No. 01-CV-6558, 2008 WL 1166309 at *3 (S.D. N.Y. Apr. 7, 2008); <u>Shrout ex rel. Arnold v. Holmes</u>, No. 00-CV-2069, 2001 WL 1526277 at *2 (D. Kan. Oct. 18, 2001); <u>Ruiz v. Estelle</u>, 553 F.Supp. 567, 584-85 (S.D. Tex. 1982).  That comparison is particularly relevant because "[b]y definition, the parties involved were litigating the same issues" and "[t]he time spent by defendants' attorneys in defending an action necessarily relates to the time spent by plaintiffs, though the relation is obviously imprecise, and may be governed by a

variety of factors." <u>Ruiz</u>, 553 F.Supp. at 584; <u>see</u> <u>also</u> <u>Howe v.</u>
<u>Hoffman-Curtis Partners, Ltd. LLP</u>, No. 03-CV-4298, 2007 WL 7086572
at *1 (S.D. Tex. Apr. 13, 2007)(discovery on defendants' own fees
is relevant in proceeding for an award of plaintiff's attorney's
fees).

At the evidentiary hearing that was held in this matter,
plaintiff relied upon the testimony of one Michael Edward Lee who
was ultimately qualified as an expert in the field of patent
attorneys' fees applications under §285.  In terms of background,
Lee had obtained an undergraduate degree in chemical engineering
which he then practiced for three years before entering law school
with the express intention of specializing in patent law.  After
graduating from law school, Lee served a two-year clerkship with
the Chief of the Federal Circuit Court of Appeals, the appellate
tribunal with jurisdiction over appeals from patent disputes across
the country.  He then practiced intellectual property law for nine
years with a specialized firm in Houston, becoming a member of the
bar of the United States Patent Office along the way.  Lee
subsequently became Chief IP Counsel for Chevron Phillips where he
oversaw the entire intellectual property function of the company,
including overseeing patent and IP litigation, managing IP lawyers
and advisors, hiring attorneys for in-house functions, and engaging
outside counsel to perform a wide variety of IP-related functions.

That also involved reviewing multiple bills from numerous pieces of litigation that the company was engaged in.  Through his private practice and in-house counsel experience, Lee was fully familiar with standard billing practices and rates in the patent law arena.

Lee further testified that §285 was somewhat unique and was governed by its own body of Federal Circuit caselaw with "exceptionality" being the overarching theme.  Having had an opportunity to review the defendant's billing records in addition to the plaintiff's, Lee initially noted that the former's legal fees exceeded those of the latter's but that the overall billing was simply a reflection of the time and cost that the case commanded.  Lee characterized the results achieved by plaintiff's counsel as "extremely successful", a "pretty solid win", and he testified that the fees that had been incurred by plaintiff were largely driven by the defendant's conduct.  When directed to the Economic Survey of the American Intellectual Property Law Association ("AIPLA"), Lee noted that the IP litigation bar was nationwide, that lead counsel on both sides of this case were not local, and that typically a prevailing party is awarded the fees of its nationally retained counsel.  The hourly rates of plaintiff's local and national counsel, ranging from $335 to $495, were consistent with rates set forth in the AIPLA survey.  The rates of defense counsel, on the other hand, ranged from $450 to $1,100 per

hour.

Against the backdrop of the AIPLA Survey, after comparing the rates that had been charged by both plaintiff's and defendant's attorneys, when coupled with the length of the case and its exceptionality, Lee concluded that the plaintiff's overall fee request was reasonable. In addition to the monetary award, plaintiff had also obtained a permanent injunction which was obviously of value and another appeal was a real possibility. Although Lee had performed no line-by-line analysis of plaintiff's billing records per se, he did not believe that the time claimed by plaintiff's counsel was inflated or that the work had not been done. Plaintiff's post-trial briefing was similar to that which had been done by the defendant whose counsel charged greater rates. In Lee's opinion, the time entries of plaintiff's counsel were not vague, required no further explanation, and comported with standard practice in patent litigation. Lee also testified that reimbursement for travel time varied by agreements between clients and firms and that "fees on fees" were recoverable as were fees for the services of non-attorneys. As of the date of the hearing, plaintiff's request for fees and costs totaled $2,532,566.00 which Lee opined was reasonable under §285 given the facts and circumstances of the case. (Tr. of Oct. 15, 2013, pp. 8-49.)

On cross-examination, Lee testified that the company he

10

previously worked for, Chevron Phillips, had billing guidelines for its outside counsel which covered matters such as travel time, research, and printing.  There were occasions when the amounts that were being billed to the company were questioned but he expected outside counsel to bill ethically and to use billing judgment.  He recalled an engagement letter between plaintiff and one set of its counsel but that had not been introduced as evidence.  Lee acknowledged that there were no Federal Circuit cases expressly sanctioning the use of national rates, only district court cases that were interpreting Federal Circuit caselaw.  Two of the district court cases on which Lee had relied, <u>Voda</u> and <u>iLor</u>, had been reversed on other grounds.  Lee further admitted that he had never had occasion, as outside counsel, to handle patent litigation in Louisiana or in the New Orleans area and he had not previously been qualified as an expert on the reasonableness of fees in a patent case.  While plaintiff's fee petition essentially sought approval for all of the fees that had been charged by its three sets of attorneys, Lee believed that the request was reasonable when compared to what the defendant had expended in this complex patent case that spanned some six years.

Lee was then directed to two orders that were previously issued by the Court in this case in which claimed attorney time was reduced and rates of $200 for associate-level attorneys and $300

for partner-level attorneys were utilized.  As the Court observed,
however, those were rulings on discovery motions under Rule 37 as
opposed to an adjudication of fees under §285.  In connection with
one of those previous rulings, Lee was further directed to a
pleading plaintiff had filed in which it argued that local billing
rates in the IP realm applied.  When viewed in its entirety, the
hourly mean attorney fee rate that Lee felt was reasonable in this
case was approximately $450.  It was further brought out that
litigation had been commenced in Massachusetts against plaintiff by
one set of its counsel, Lando & Anastasi, for non-payment of fees,
some of which had been earned in this case, in which plaintiff had
made various statements criticizing the quality of that firm's work
and had cited as applicable the $200 to $300 hourly rates noted
above.  Through redirect examination, it was again noted that the
litigation pending in Massachusetts involved work other than that
which had been performed in this case.  And unlike sanctions or
awards of attorneys' fees under Rules 37 or 11, §285 embraced the
work effort in any given patent case in its entirety.  (Tr. of Oct.
15, 2013, pp. 49-106).

   At the outset of the second day of the evidentiary hearing,
plaintiff's counsel acknowledged that $12,355.00 in sanctions that
had been awarded to his client had already been paid so no further
claim was being made for that sum.  Counsel for both sides then

stipulated that an additional $20,000.00 was being sought by the Lando firm in the Massachusetts case which had nothing to do with the work that had been performed in this case.  The fact remained, however, that plaintiff had not paid the Lando firm for the services that it had rendered here and had contested the competence of that firm in the Massachusetts case, whether by act or omission. The Court disallowed plaintiff's principal, Dr. Larson, from testifying but did allow a proffer on his expected testimony.  (Tr. of Oct. 31, 2013, pp. 4-17).

Defendant's expert, Robert Patrick Vance, whose qualifications the Court is well aware of, was then called to the stand and was tendered as an expert in the reasonableness of attorneys' fees in general in the South and in New Orleans in particular.  Although he had never represented a party in patent litigation, had never testified as an expert in a patent case prior to this one, and had never been involved in a §285 fee petition, he was ultimately qualified over plaintiff's objection with the argued deficiencies going to the weight of his testimony.  Having considered the billing records of plaintiff's counsel, the nature of the lawsuit and the result obtained, and the reasonableness standard of Hensley, Vance believed that an award of $955,567.50 was appropriate in this case.  In arriving at that amount, Vance had utilized the rates of local counsel which was consistent with the

13

Court's earlier rulings on the two discovery motions.  Citing Fifth Circuit caselaw, Vance testified that the use of non-local counsel was a rare exception which required an affirmative showing that there was no one local who was willing or able to take the case. Even after January 1, 2011 when local AIPLA rates increased to $225 to $325, plaintiff's fee request, without any deductions, still amounted to only $1,539,334.45, far less than the approximately $2.3 million that was being sought.  Moreover, Vance believed that plaintiff's local counsel alone was sufficiently competent to have handled the case.

Continuing, Vance testified that plaintiff's counsel had exercised billing judgment in connection with the discovery disputes earlier in this case but had apparently abandoned that approach in their §285 fee petition.  In his view, there was no meaningful oversight by plaintiff over its counsel by way of billing guidelines.  What plaintiff may have paid its attorneys did not necessarily equate with reasonableness and the fee request improperly sought reimbursement for travel time and office conferences, contained double counting, and was vague in some respects.  When directed to the 2013 AIPLA rates, Vance testified that a $2.3 million fee request in a case with an overall exposure of $1 to $10 million was unreasonable and that the median for both fees and costs was more appropriate at $1,150.000.00. (Tr. of Oct.

14

31, 2013, pp. 17-50).

On cross-examination, Vance admitted that the attorneys' fees provisions cited in <u>Hensley</u> arose from Title 42 of the United States Code, not Title 35 in which §285 is codified.  While Vance commended the competence of plaintiff's local counsel, he was unaware if either of those two attorneys had ever tried a patent case.  He admitted that the Court's prior rulings in this case were based upon Rule 37 standards and the cases that were cited in his expert report were not patent cases.  Vance also believed that the jurisprudence upon which plaintiff's expert had relied represented the minority view but he did acknowledge that the Court had the discretion to award fees using higher hourly rates.

Notably, Vance testified that the three defendants that had been sued in this case conducted business on a nationwide basis and had been sued for patent infringement across the country.  He also admitted that the infringement at issue in this case had occurred nationwide.  For their part, the defendants had chosen the most competent patent defense counsel that they could find from Boston, Chicago, and Washington, D.C.  Absent from Vance's expert report were the hourly rates of those defense counsel which greatly exceeded those of plaintiff's attorneys.  Measured against the 2011 AIPLA Survey, the rates of a number of plaintiff's non-local attorneys were less than those charged in the Boston and San

Francisco markets.  Nevertheless, Vance believed that the rates of plaintiff's local counsel, while at the high end of the range, were reasonable for this market.  Compared with the roughly $2.6 million that the defendants were charged by their attorneys, Vance testified that an award of only 40% of that amount was reasonable for plaintiff's counsel.

Following up on the latter point, Vance emphasized the distinction between what an attorney charges and what a client may pay as opposed to a fee petition in court which triggers the use of enhanced billing judgment.  He could shed no light on whether the defendants believed that their attorneys' charges were reasonable. Before trebling, what the jury had awarded in damages was low on the AIPLA Survey and Vance discounted the value of the injunction that was issued in this case as it was his understanding that MGA had voluntarily discontinued sales of the infringing product.  In Bendix, supra, however, even though only $300,000 in damages had been awarded, a fee of $2.6 million was appropriate where a permanent injunction had also been obtained.  Vance was then directed to the portion of the District Judge's opinion in which she had characterized all of plaintiff's counsel as "well-qualified and respected."  Nevertheless, in his expert report Vance had reduced local counsel's time as duplicative of non-local patent counsel.  And contrary to Federal Circuit caselaw, Vance objected

16

to any award of fees-on-fees and for work that was done at the appellate level.  One set of plaintiff's counsel who had taken on the case on a contingency basis was believed to have billed excessively and for duplicative work as a result of bad management. One of Vance's objections was for time spent on post-trial briefing even though defense counsel had expended roughly the same amount of time at far greater hourly rates.  Vance testified that such was an inapt comparison as the defendant was not the party that was petitioning for fees.  (Tr. of Oct. 31, 2013, pp. 50-107).

Through redirect examination it was brought out that, notwithstanding the hourly rates which defense counsel had billed to their clients, they had conceded to use of the $200 to $300 rates the Court had previously arrived at in connection with its fee-related ruling stemming from plaintiff's belated production of damage-related documents.  In that ruling, the defendants' billable hours had also been reduced.  In response to the Court's inquiry, plaintiff's counsel reported that all of its local attorneys had been compensated by plaintiff and that $576,000.00 of the Lando firm's bills had been paid although other invoices at issue in the Massachusetts litigation remained unpaid.  (Tr. of Oct. 31, 2013, pp. 107-113).  Over the course of the two-day evidentiary hearing, a total of thirteen exhibits were admitted on the plaintiff's behalf and another eight exhibits were admitted on the defendant's

17

behalf.  (Rec. doc. 649).

"[T]he awarding of attorney fees pursuant to 35 U.S.C. §285 is an issue unique to patent law and therefore subject to Federal Circuit law." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 (Fed. Cir. 2001).  "[T]he amount of the attorney fee depends on the extent to which the case is exceptional.  In other words, the exceptionality determination highly influences the award setting." Id. at 1344.  And as was noted, supra, where a prevailing party has obtained excellent results, its attorneys should recover a fully compensatory fee, one that encompasses all hours reasonably expended in the litigation. Mathis, 857 F.2d at 755.

Based on his knowledge and experience in the highly specialized field of patent litigation, the Court finds the testimony of plaintiff's expert to be more probative and persuasive in the matter sub judice.  Lee credibly testified that plaintiff's attorneys had obtained excellent results in this case which the Court does not take exception with.  The jury found subjective willful infringement on every asserted claim, a finding that the Judge found to be supported by substantial evidence, and the Judge found MGA's infringement to be objectively willful by clear and convincing evidence.  The Judge also found that defendant had engaged in various acts of misconduct throughout this case and had

18

resorted to particularly aggressive tactics immediately prior to, during, and even after trial. (Rec. doc. 634, pp. 40-48). Based upon that misconduct, the size disparity between the parties, the fact that defendant's infringement was willful, and the factors set forth in Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992), the Judge found that enhanced damages were appropriate and that the case was an exceptional one. Indeed, notwithstanding Messr. Vance's testimony to the contrary, the Judge found that MGA only ceased its willful infringement more than two years into this litigation after it was enjoined from continuing its unlawful course of conduct. (Rec. doc. 634, p. 49). What the value of that injunction and the prospective permanent injunction that the Judge indicated will be issued the Court is unable to quantify. What is clear, however, is that the amount at stake in this case "... should also include the value of future damages that would have been incurred had the infringement not been enjoined as a result of the litigation." Bendix, 2011 WL 871413 at *3. The exceptionality of this case should weigh heavily in the attorneys' fees award. Special Devices, 269 F.3d at 1344.

In terms of the reasonableness of plaintiff's fee request, the Court finds it particularly helpful to compare that with MGA's own legal expenses in terms of hourly rates, the number of hours that were expended, and the overall amounts that were billed. Hnot,

19

2008 WL 1166309 at *3; <u>Arnold</u>, 2001 WL 1526277 at *2; <u>Ruiz</u>, 553
F.Supp. at 584-85.  On all three of those fronts, what MGA logged
and charged in this case exceeded that which was spent by the
plaintiff.  For their part, the defendants chose the most competent
counsel that they could find from Boston, Chicago, and Washington,
D.C.  Given the highly technical nature of patent law and the fact
that the infringement in this case was nationwide, that plaintiff
also chose to utilize specialists in the field is quite
understandable.  Tellingly, for purposes of the evidentiary hearing
that was held in this matter, neither party was able to locate a
local patent law expert to specifically testify about the
reasonableness of attorneys' fees under §285.  Moreover, the Lando
attorneys who originally served as counsel in this case prosecuted
the '242 patent at issue.  And given the different purpose that
§285 serves as compared with other grounds upon which attorney's
fees can be awarded such as Rules 11 or 37, the Equal Access to
Justice Act ("EAJA"), or other fee provisions within Title 42, the
Court declines to use the hourly rates that were arrived at in
resolving the discovery-based disputes that arose earlier in this
case.  <u>Highmark</u>, 701 F.3d at 1354-55; <u>Mathis</u>, 857 F.2d at 753.

Lee testified that the bills that were generated by
plaintiff's counsel all comported with the applicable jurisprudence
and were standard practice in the specialized field of patent law.

20

Having had the opportunity to review in some detail those very billing records, the Court believes that they sufficiently described the work that was undertaken and do not suffer from the vagueness and other objections advanced by the defendant. (Rec. docs. 602-1 to 602-4; 613-1 to 613-3; 628-1). That this is so is confirmed by comparing plaintiff's billing records with the defendant's. (Exs. P-1 to P-7). Only the general subject matter of the work that was performed need be identified, St. Gobain, 707 F.Supp.2d at 763, and the billing records of plaintiff's counsel constitute more than ample evidence of the reasonableness of the rates charged and the number of hours expended. See Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir. 1983); SDS Korea Co. Ltd. v. SDS USA, Inc., No. 10-CV-4053, 2012 WL 3114753 (D. N.J. July 31, 2012). That being the case, it will be recommended that plaintiff's request for attorneys' fees be granted, subject to the reduction set forth below. The Court believes such an award will serve to compensate plaintiff and to put it in as near a position it would have been had the infringement not been committed. Mathis, 857 F.2d at 753-54.

In addition to local counsel of record, plaintiff's other set of attorneys who originally appeared in this case emanated from the law firm of Lando & Anastasi in Cambridge, Massachusetts. By way of the present fee petition, plaintiff seeks to recover $869,249.75

for that firm's services.  (Rec. doc. 650, p. 7).  As was noted earlier, during the course of the evidentiary hearing that was held in this matter it was revealed that Lando had initiated a lawsuit against plaintiff in the United States District Court for the District of Massachusetts seeking the recovery of $528,985.79 for unpaid legal expenses (Ex. D-5, p.2), $20,000.00 of which was for work that was unrelated to this case. (Tr. of Oct. 31, 2013, pp. 9-10).  It was also revealed that in the context of that litigation, plaintiff had made multiple statements contesting the competence of the Lando firm, whether through act or omission. Those criticisms, when viewed against the position that plaintiff takes in its fee petition, constitute statements against interest. Given the fact that the monies at issue in the Massachusetts litigation are for fees that were charged in this case commingled with those that were generated in other unrelated matters, the Court opts to carve out that disputed amount from the sum awarded herein, particularly since plaintiff questions the effectiveness/ necessity of the services rendered.  Accordingly, it will be recommended that the attorneys' fees to be awarded to plaintiff be reduced by $508,985.79, the amount that is at issue in the Massachusetts litigation that is attributable to this case.

The Court now turns to the remaining referred matters, i.e., taxable and non-taxable costs.  Falling into the former category is

22

plaintiff's request for exemplification and copying costs and interpreters' costs under 28 U.S.C. §1920. (Rec. doc. 634, pp. 54-55). In the latter category falls plaintiff's request for fees for trial presentation professionals, legal research costs, courier and postage costs, telephone costs, travel and lodging expenses, and any identified taxable costs that may be determined to be non-taxable costs. (Id. at p. 56).

In Central Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983), the Federal Circuit interpreted the term "attorney fees" as set forth in §285 "... to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." See also Mathis, 857 F.2d at 754 (§285 permits reimbursement of legitimate expenses a party was unfairly forced to pay). "These costs and expenses include reasonable out-of-pocket expenses incurred by attorneys and normally charged to their clients, including expenses for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, and courier services." Ilor, 2009 WL 3367391 at *8 (citations and internal quotations omitted). See also St. Gobain, 707 F.Supp.2d at 765 (recovery of costs relating to travel, lodging, food, copying, scanning, court reporters, interpreter services, and computer research).

MGS argues that "[n]one of the copying expenses incurred by Stone Pigman or Lando are recoverable because Innovention provided no proof that they were necessary for use in the case." (Rec. doc. 607, p. 29). Although 28 U.S.C. §1920(4) does allow a court to tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case ...", §285 has been construed broadly to provide an additional basis for an award of what would otherwise be taxable costs irrespective of what §1920 requires. Ilor, 2009 WL 3367391 at *8 (§285 award included copying, court reporting fees and costs, and deposition transcripts although also taxable under §1920). As for whether the requested costs were necessary, it is quite understandable that substantial litigation expenses would be incurred in a case of this magnitude which has spanned over six years. See, e.g., St. Gobain, 707 F.Supp.2d at 765. As plaintiff will not be recovering its expert witness fees, the other costs that it seeks reimbursement for take on a new light. Id. at 765-66. Plaintiff should thus be awarded its exemplification and copying costs.

In terms of interpreters' fees, defendant opposes an award of those sums, arguing that plaintiff retained two interpreters but only used one of them at trial which was an unnecessary exercise because the interpreter was used to interpret the testimony of

plaintiff's own witness whom plaintiff had reportedly conversed with in the past without the aid of an interpreter.

With the benefit of hindsight, it is all too easy to second-guess the trial strategy of the attorneys who presented plaintiff's case to the jury over the course of five days.  That strategy included making arrangements for the presentation of the testimony of at least one Chinese national in a manner that was most persuasive and understandable to the jurors.  In addition, the Court is hard-pressed to believe that the plaintiff, in taking on the herculean task of preparing the case for trial, would run up needless expenses unnecessarily at a time when both a favorable outcome was uncertain and when recoupment of expenses under §285 was even less certain.  While the sum requested by plaintiff may seem high at first glance, it is not wholly out of line with interpreters' fees that have been awarded in other cases.  See, e.g., St. Gobain, 707 F.Supp.2d at 765 n. 25.  Plaintiff should thus be reimbursed the interpreters' fees that it incurred in preparing for and presenting its case at trial.  Central Soya, 723 F.2d at 1578.

Finally comes the matter of non-taxable costs which include fees for trial presentation professionals, legal research costs, courier and postage costs, telephone costs, and travel and lodging expenses which total over $110,000.00.  Of those enumerated costs,

defendant only specifically challenges the reasonableness of the trial presentation professional fees and courier and postage costs. As to the former fees, MGA argues that said sum was unreasonable as much of the first and last days of trial did not require any trial presentation.  With respect to the claimed courier and postage costs, defendant complains that plaintiff used expensive expedited shipping without explaining the necessity for doing so.

MGA does not argue that fees for trial presentation professionals are not recoverable, only that such services were not required on portions of the five-day jury trial.  While it is possible to predict and plan for the events that unfold during the course of any jury trial to some extent, such prognostication is obviously an inexact science that is wrought with a degree of uncertainty.  That plaintiff arranged for trial support services that were not utilized in their entirety does not render its preparation unreasonable.  Given the fact that the case was litigated zealously over a span of over six years, the courier and postage costs that were expended by plaintiff do not appear to be unreasonable.  It would be inconsistent with the intent of §285 to limit the prevailing-party plaintiff to something less than the fees and expenses to which it was subjected in this exceptional case of willful infringement.  <u>Mathis</u>, 857 F.2d at 758.

**<u>RECOMMENDATION</u>**

26

For the foregoing reasons, it is recommended that plaintiff's request for attorneys' fees and costs be granted in part and that it be awarded attorneys' fees in the amount of $1,804,037.71 and costs in the amount of $219,552.52, for a total of $2,023,590.23.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this  24th day of      February     , 2014.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE